WOLFGRAM v. VALKO.

Decision of the Court.

1. Automobiles—3-Car Collision—Equally Divided Court.
   Orders granting motions for directed verdict for overtaken
   motorist at close of plaintiff's opening statement and for
   directed verdict for overtaking motorist at close of plaintiff's
   proofs in action for wrongful death of plaintiff's decedent,
   a motorist traveling in opposite direction and killed in col-
   lision involving all 3 cars, is affirmed by an equally divided
   court.

Separate Opinion for Affirmance.

Dethmers, Kelly, and O'Hara, JJ.

2. Automobiles—Contributory Negligence—Proximate Cause—
   Nighttime—Unlighted Car.
   *Contributory negligence as a matter of law on part of plaintiff's
   decedent, in driving his car southbound without lights at*

---

References for Points in Headnotes

[1] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 758, 778, 779,
    786.
[2, 3] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 705, 706.
    Driving motor vehicle without lights or with improper lights as
    affecting liability for collision. 21 ALR2d 7.
[4] 38 Am Jur, Negligence §§ 175, 212.
[5] 7 Am Jur 2d, Automobiles and Highway Traffic § 375.
[6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 364, 369, 375.
    8 Am Jur 2d, Automobiles and Highway Traffic §§ 1013, 1015.
[7, 8] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 705, 706,
    1013, 1015.
    Driving motor vehicle without lights or with improper lights as
    affecting liability for collision. 21 ALR2d 7.
[9, 17] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 786, 787.
    Duty and liability of overtaken driver with respect to adjusting
    speed to that of passing vehicle. 91 ALR2d 1260.
[10] 38 Am Jur, Negligence § 2.
[11] 8 Am Jur 2d, Automobiles and Highway Traffic § 786.
[12] 38 Am Jur, Negligence § 344.
[13–16] 8 Am Jur 2d, Automobiles and Highway Traffic § 1017.

2:30 a.m. on a dark night on a 2-lane highway precluded recovery from either of 2 northbound motorists whether overtaken motorist who saw decedent's car failed to slow down, blink lights, or give way to the right so as to permit overtaking motorist to get back into northbound lane or the overtaking motorist were guilty of negligence or not, since contributory negligence of plaintiff's decedent was a proximate cause of his fatal injuries (CLS 1961, §§ 257.636, 257.684, 257.685).

3. SAME—NIGHTTIME—HEADLIGHTS—NEGLIGENCE.
    Whether or not unlighted car of plaintiff's decedent, southbound on 2-lane highway at 2:30 a.m. on a dark night could have been seen by northbound overtaken motorist and the overtaking motorist involved in ensuing collision related to question of the negligence of the northbound motorists, the lack of lights on the southbound car making it more difficult to see such car in time to avoid the collision (CLS 1961, §§ 257.684, 257.685).

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE.
    Contributory negligence need not be the sole proximate cause of an accident in order to bar recovery.

SEPARATE OPINION FOR REVERSAL AND REMAND.
T. M. KAVANAGH, C. J., and SOURIS and ADAMS, JJ.

5. AUTOMOBILES—VIOLATION OF STATUTE—PROXIMATE CAUSE.
    A motorist who has violated a statutory rule of the road is not barred thereby from recovery unless his violation of the statute was a proximate cause of his injury.

6. SAME—VIOLATION OF STATUTE—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR TRIER OF THE FACTS.
    Contributory negligence of a plaintiff motorist whose dereliction is claimed to be due to violation of a statute presents questions of fact for the trier of the facts as to whether plaintiff did or did not violate the applicable statute, and, if he did, whether such violation of the statute was indeed a proximate cause of his injury.

7. SAME—VIOLATION OF STATUTE—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—NONOPERATING HEADLIGHTS.
    Issue of contributory negligence of plaintiff southbound motorist who is claimed to have been driving at 2:30 a.m. without

*headlights operating when his car collided with defendants'
vehicles, in violation of statute, should have been submitted
to jury, where there was proof that effective area of illumina-
tion of certain street lights in the vicinity of the accident was
such that the jury could have found the absence of oper-
ating headlights not a proximate cause of the collision (CLS
1961, §§ 257.684, 257.685).*

8. SAME—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—QUESTION
FOR JURY.

*Directed verdict for defendant overtaking motorist whose car
and that of the overtaken motorist were involved in collision
with plaintiff's oncoming car, on ground that plaintiff was
guilty of contributory negligence in driving without his head-
lights operating, held, error, where questions of contributory
negligence and proximate cause were questions of fact for the
jury under the evidence presented (CLS 1961, §§ 257.684,
257.685).*

9. SAME—OVERTAKEN VEHICLE—FAILURE TO YIELD—COLLISION WITH
ONCOMING CAR.

*Directed verdict for defendant overtaken motorist whose car
and that of the overtaking motorist were involved in collision
with plaintiff's oncoming car at close of plaintiff's opening
statement on the basis that the defendant overtaken motorist
was, as a matter of law, free from negligence, held, error,
where opening statement of plaintiff claimed overtaken motor-
ist failed to use due care by continuing to drive his car
without changing his speed or path of travel to let the over-
taking car get back in right lane of 2-lane highway after
it became apparent that a collision would occur if he did not
do so.*

10. NEGLIGENCE—DEFINITION.

*Negligence is the failure to observe, for the protection of the
interests of another person, that degree of care, precaution,
and vigilance which the circumstances justly demand, whereby
such other person suffers injury.*

11. AUTOMOBILES—OVERTAKEN MOTORIST.

*A motorist being overtaken and passed may not conduct himself
without regard to the interests of others using the highway
(CLS 1961, § 257.636).*

SEPARATE OPINION FOR REVERSAL AND REMAND.

T. M. KAVANAGH, C. J., and BLACK and SOURIS, JJ.

12. NEGLIGENCE—QUESTION OF LAW.

Negligence may be considered a question of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them.

13. WITNESSES—CREDIBILITY—QUESTION FOR JURY—CROSS-EXAMINATION OF OPPOSITE PARTY.

The credibility of a defendant who was called for cross-examination with respect to the key issue of fact as to how collision took place automatically became a matter for jury consideration when he took the stand, since he is, legally, an interested witness and plaintiff is not bound by his testimony (CL 1948, § 617.66).

14. TRIAL—CREDIBILITY—QUESTION FOR JURY—AFFIRMATIVE DEFENSES.

A jury may disbelieve the most positive evidence, even when it stands uncontradicted, and the judge cannot take from them their right of judgment, especially when the party having the affirmative of an issue asks the court to hold that he has established that affirmative as a matter of law (Court Rule No 23, § 3a[1945]).

15. SAME—UNCONTRADICTED TESTIMONY.

The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make.

16. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE—QUESTION FOR JURY.

Directed verdict for defendant overtaking motorist whose car and that of defendant overtaken motorist were involved in collision with plaintiff's oncoming car, on ground that plaintiff was guilty of contributory negligence in driving without his headlights operating, held, error, where testimony to establish such fact was that of defendant overtaking motorist, called for cross-examination under the statute, as the credibility of his testimony was for the jury (CL 1948, § 617.66).

17. SAME—OVERTAKEN VEHICLE—FAILURE TO YIELD—COLLISION WITH ONCOMING CAR.

Directed verdict for defendant overtaken motorist whose car and that of the overtaking motorist were involved in collision with plaintiff's oncoming car at close of plaintiff's opening state-

*ment on the basis that the defendant overtaken motorist was, as a matter of law, free from negligence, held, error, where opening statement of plaintiff claimed overtaken motorist failed to use due care by continuing to drive his car without changing his speed or path of travel to let the overtaking car get back in right lane of 2-lane highway after it became apparent that a collision would occur if he did not do so.*

Appeal from Oakland; Dondero (Stanton G.), J. Submitted November 5, 1964. (Calendar No. 55, Docket No. 50,394.) Decided May 10, 1965.

Declaration by Duma Alice Wolfgram, administratrix of the estate of Floyd Wolfgram, deceased, against Leo T. Valko and Richard L. Reid, jointly and severally, for the death of Floyd Wolfgram in a multiple automobile collision. Case dismissed. Plaintiff appeals. Affirmed by an equally divided court.

*Albert Lopatin* (*Norman L. Zemke,* of counsel), for plaintiff.

*Howlett, Hartman, & Beier* (*Kenneth B. McConnell,* of counsel), for defendant Valko.

*Ward, Plunkett, Cooney, Rutt & Peacock* (*David J. Watters, Jr.,* and *Charles T. McGorisk,* of counsel) for defendant Reid.

DETHMERS, J. (*for affirmance*). Plaintiff appeals from verdict for defendant Reid, directed by the court at the close of plaintiff's opening statement, and verdict for defendant Valko, directed at the conclusion of plaintiff's proofs. The suit is for damages resulting from the wrongful death of plaintiff's decedent allegedly caused by the negligent operation of motor vehicles by the defendants.

Viewed in the light most favorable to plaintiff, on December 10, 1961, her decedent was driving his automobile south in the westerly lane of a 2-lane, north and south highway, at about 2:30 a. m. of a dark night, without headlights on. Defendant Reid was driving north in the easterly lane at a speed of about 35 miles per hour. Defendant Valko was driving his car following Reid and undertook to pass him. When Valko's car was about alongside that of Reid, he saw, in the light from his own headlights, the reflection of decedent's unlighted approaching car. A collision ensued shortly, involving all 3 cars. Decedent was killed.

Plaintiff's theory, as expressed in her counsel's opening statement, was that one of the proximate causes of the collision was the negligence of defendant Reid, after he saw or should have seen the imminence of a collision between decedent's and Valko's cars, in failing to speed up, or slow down, or sound his horn, or blink his lights, or drive off onto the right shoulder of the road and thus do whatever he could to allow Valko to get back on his own side of the road and to prevent the accident. At the conclusion of plaintiff's opening statement the court granted defendant Reid's motion for directed verdict on the ground that no legal duty had reposed on him to do any of the things mentioned by . plaintiff's counsel as having been means available to Reid to prevent the .accident. Reference was made to the provision of the statute (CLS 1961, § 257.636 [Stat Ann 1960 Rev § 9.2336]) that the driver of an overtaken vehicle shall not accelerate until completely passed by the overtaking vehicle and it was stressed by defendant that the statute does not require decelerating. Plaintiff urged, however, that, despite no such statutory requirement, a common-law duty rested on Reid to do what a reasonably prudent

and careful driver would have done under like circumstances to avert the accident, and that the question of whether he had done so or not and whether any failure in that regard was a proximate cause of the accident was one of fact for the jury, prohibiting a directed verdict by the court.

As for defendant Valko, the court directed a verdict in his favor on the ground of decedent's contributory negligence in traveling in the dark of night without lighted headlights contrary to statute (CLS 1961, §§ 257.684, 257.685 [Stat Ann 1961 Cum Supp § 9.2384, Stat Ann 1960 Rev § 9.2385]). To this, plaintiff says that a jury question was presented as to whether the lack of those lights had been a proximate cause of the accident. In this connection, plaintiff introduced some proofs as to the existence in that locale of certain streetlights and the distance at which an unlighted automobile could or should have been seen by defendants prior to the collision.

For her position that a jury question of fact was presented as to whether decedent's negligence was a proximate cause, plaintiff cites *Beebe* v. *Hannett,* 224 Mich 88, *Gleason* v. *Lowe,* 232 Mich 300, and *Cookson* v. *Humphrey,* 355 Mich 296. They do not support it. In *Beebe* plaintiff had but one headlight lighted, the left one, contrary to statute. Plaintiff testified that he was driving on his extreme right side of the road before the collision. Defendant testified that he saw plaintiff's car coming but did not know whether it was an automobile or a motorcycle, but that he drove to his right side of the road before the collision. They struck head-on. Under such circumstances, the fact that each party testified that he was over on his own side, in which case the collision could not have occurred, and the further fact that defendant saw plaintiff's vehicle approaching and that its left headlight was

on, making it imperative for defendant to be far enough over to his right to avoid striking such light regardless of whether it was on an automobile or a motorcycle, gave rise to a question of fact whether the collision would not have occurred if plaintiff's right headlight had been on. In *Gleason* defendant's automobile struck the rear of plaintiff's unlighted lumber wagon traveling in the same direction. The statute involved required a light to be on the left rear of such vehicle as plaintiff's during the hours from 1 hour after sunset until 1 hour before sunrise. There was dispute in the proofs as to whether the collision occurred more or less than 1 hour after sunset and as to whether it was dark. Naturally, this gave rise to a question of fact as to whether the statute had been violated and whether it was then dark enough so that absence of a taillight contributed to the accident. In *Cookson* plaintiff was driving a motorcyle, after dark, with a headlight which did not comply with statutory requirements as to how far it illuminated objects ahead of it at the speed he was traveling. Defendant's truck was coming from plaintiff's left, approaching the intersection at which the collision occurred. This Court held plaintiff guilty of negligence as a matter of law for failure to comply with the statutory headlight requirement. We held the question of whether it had been a proximate cause of the collision to be one of fact because even a headlight of the strength required by statute for throwing a ray of light straight ahead might not have revealed defendant's truck coming from the left soon enough to have enabled plaintiff to avoid the accident. The instant case is distinguishable from the 3 cited cases in controlling respects. Here defendants did not, as in *Beebe,* have the benefit of even one lighted headlight on decedent's car and know of his approach. Here there was not, as

in *Gleason,* a question of fact as to whether it was dark enough so that the absence of lights on the vehicle would have made any difference. Here, as distinguished from *Cookson,* the important, pertinent part that lighted headlights on decedent's car would have played, insofar as his contributory negligence is concerned, was not to enable the driver (decedent) to see a proper distance ahead but, rather, to make decedent's approaching automobile visible to defendants. Had the headlights been lighted on decedent's car, certainly defendants could have seen it. Whether defendants could have seen it even without those lights is not controlling of the contributory negligence question, but goes only to the question of whether defendants were guilty of negligence which was a proximate cause. To bar recovery it is not necessary that decedent's contributory negligence was the sole proximate cause. That the lack of lights on his car made it more difficult for the defendants to see it is self-evident and certainly contributed to their failure to see it in time to avoid the accident. We hold, therefore, that, as a matter of law, decedent's negligence was a proximate cause of his injuries, barring plaintiff's right to recover. It follows that, for whatever reason granted, both defendants were entitled to directed verdicts in their favor.

Affirmed. Costs to defendants.

KELLY and O'HARA, JJ., concurred with DETHMERS, J.

SMITH, J., concurred in result.

SOURIS, J. It is the settled law of this State that a plaintiff in a negligence action who has violated a statutory rule of the road is not barred thereby from recovery unless his violation of the statute

was a proximate cause of his injury. *Arvo* v. *Delta Hardware Co.* (1925), 231 Mich 488. It is equally settled law that such issue of contributory negligence presents the following questions of fact to be determined by the triers of fact, (1) whether plaintiff did or did not violate an applicable statute, and, if he did, (2) whether plaintiff's violation of the statute was indeed a proximate cause of his injury. *Brown* v. *Tanner* (1937), 281 Mich 150, and *Thompson* v. *Llewellyn* (1964), 372 Mich 588, 592.

In this case of Wolfgram, there was introduced testimony that immediately prior to the collision plaintiff's decedent was driving his automobile after dark without its headlights operating, in violation of CLS 1961, §§ 257.684, 257.685 (Stat Ann 1961 Cum Supp § 9.2384, Stat Ann 1960 Rev § 9.2385). Plaintiff introduced proof of the location, and effective area of illumination, of certain streetlights in the vicinity of the accident scene, from which, if believed, it could be inferred that the absence of operating headlights on decedent's vehicle was not a proximate cause of the collision.

In such circumstances, it should have been left to the jury to determine whether decedent did in fact violate the statute and, if so, whether such violation was a proximate cause of the collision with defendant Valko. *Vukich* v. *City of Detroit* (1947), 318 Mich 515; *Tacie* v. *White Motor Company* (1962), 368 Mich 521; and *Schian* v. *Bierlein* (1963), 369 Mich 219. Thus the trial judge, who properly eschewed making a finding that defendant Valko was free from negligence, nonetheless erred in directing a verdict in his favor on the basis that decedent was as a matter of law guilty of contributory negligence which was a proximate cause of his injury.

The trial judge also erred at the close of plaintiff's opening statement by directing a verdict in

favor of the other defendant, Reid, on the basis that
the latter was as a matter of law free from neg-
ligence.   The fact that defendant Reid's conduct
may not have violated any statutory duty does not
mean that he was therefore free of common-law
negligence.   *Cooke* v. *Brown* (1961), 365 Mich 172,
176, 177.   As this Court has been reiterating for
nearly a century, negligence at common law is a
matter of reasonable care in the particular circum-
stances involved.   *Detroit & M. R. Co.* v. *Van Stein-
burg* (1868), 17 Mich 99; *Michigan C. R. Co.* v.
*Coleman* (1874), 28 Mich 440; and *Frederick* v. *City
of Detroit* (1963), 370 Mich 425.

In plaintiff's opening statement, upon the basis
of which the trial judge found defendant Reid free
as a matter of law from negligence, plaintiff's coun-
sel stated:

"We will show that Mr. Reid, who is the driver
of the northbound car which was being overtaken,
knew before this impact was going to take place
that an accident was imminent, that it could not be
avoided.   Yet Mr. Reid continued to drive his car
without varying the speed, without changing his
path of travel to let the Valko car get in.   He
remained in the same position, continued in the same
path of travel, did not slow down or let the other
car that was attempting to pass him in, when he
knew that an accident could not be avoided, that
it was going to happen."

Had plaintiff introduced evidence to substantiate
these allegations, and had defendant Reid failed
persuasively to rebut the allegations or offer some
excuse for, or defense of, his inaction in the face
of impending injury to his fellow highway travelers,
the jury would have been entitled to find him guilty
of common-law negligence.   As was stated in *Brown*
v. *Congress & B. S. R. Co.* (1882), 49 Mich 153, 156,
quoting from Cooley on Torts (1st ed), p 630, neg-

ligence is " 'the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury' ". The legislature has specifically recognized that a driver being overtaken and passed may not conduct himself without regard to the interests of others using the highway. CLS 1961, § 257.636 (Stat Ann 1960 Rev § 9.2336). The existence of a statute regarding a specific detail of the duty of a driver being passed does not, of course, absolve him from his general duty of exercising due care for the protection of others on the highway. *Holmes* v. *Merson* (1938), 285 Mich 136. The issue whether defendant Reid did, in the circumstances of this case, exercise due care " 'for the protection of the interests' " of decedent should not, therefore, have been taken from the jury on peremptory direction. See, generally, the discussion in Ames, Law and Morals, 22 Harv L Rev 97, 112, 113 (1908); and 2 Harper & James, Torts (1956), § 118.6, pp 1044–1053.

The judgment should be reversed and remanded as to both defendants. Costs to plaintiff.

T. M. KAVANAGH, C. J., and ADAMS, J., concurred with SOURIS, J.

BLACK, J. (*for reversal*). We differ again upon the question of the sufficiency of proof to withstand motion for a directed verdict which assigns contributory negligence. The steady recurrence of such discord recalls what on earlier occasions revealed evidence of "favorable view" respect, not only for the viewpoints of other supposedly "reasonable minds" as applied to this specific class of appeals,[1]

---

[1] See FEAD, J., writing for the Court in *Adams* v. *Canfield*, 263 Mich 666, 669:

but also for the established Michigan rule that "It is only where the facts are such that *all* reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." The quotation is from *Grand Trunk R. Co.* v. *Ives,* 144 US 408, 417 (12 S Ct 679, 36 L ed 485), citing numerous authorities including *Detroit & M. R. Co.* v. *Van Steinburg,* 17 Mich 99, and other early Michigan cases.[2]

The question seemingly being close (at least our votes for affirmance and votes for reversal so indicate), it appears that the Brethren standing for affirmance of these instructed verdicts are convinced that the Brethren standing for jury verdicts are either unreasonable men or that they have unreasonable minds; otherwise they would follow Justice FEAD's lead, quoted above. Having considered such factor I proceed, stressing at the outset that defendant Valko's credibility, with respect to the key issue of fact herein, automatically became a matter for jury consideration when he took the stand.

Without so much as the bat of an eye at the constitutional process of jury justice, the trial judge[3]

---

"In my opinion, the combination of plaintiff's failing to make further observation and of driving at a slow rate of speed constituted negligence as a matter of law. A majority of the court hold otherwise. Under the rule that a state of facts will not be deemed negligence by law where reasonable minds may differ upon it, the situation forbids my adhering to my opinion in making decision. Consequently we hold that the case presents an issue of fact upon plaintiff's contributory negligence."

See, also, FELLOWS, J., writing similarly for the Court in *Pratt* v. *Detroit Taxicab & Transfer Co.,* 225 Mich 147, 151.

[2] The Michigan cases were collected, all then 13 of them, in *Beach* v. *City of St. Joseph,* 192 Mich 296. The citations appear in *Beach* below this statement (p 301):

"Before such a conclusion [of contributory negligence as a matter of law] can be arrived at, *all* reasonable minds must reach the same decision, that under the undisputed testimony there was such contributory negligence as would bar recovery." (Emphasis added.)

[3] The trial judge at least had a reason for his acceptance of such part of young Valko's testimony. After having said that "The only testimony we have as to how the accident happened came from Mr. Valko," the judge concluded:

and the Brethren voting to affirm have usurpedly
seated themselves as weighers and triers of the
testimony adduced in this case. Having picked out
the one sworn statement, by the one interested wit-
ness, which if true transferred the onus of negligent
causation from that witness to the departed
decedent, these judges have recorded successive
findings of fact—as on nonjury trial—that the plain-
tiff's decedent, even though on his own side of
the highway at all times, caused this head-on col-
lision by driving with unlighted headlamps that dark
and rainy night.

Now in their own minds my Brethren, even though
they did not see or hear young Valko testify, may
indeed believe his story as they read it in print.
But they have no right to apply that belief to a
decision on review of this law case. The right of
trial by jury, accorded by the Constitution to all
parties to this cause, forbids such application of
personal belief. It calls, too, for something more
than the curt declaration of a judge's *dixi* when
an appellant comes here with plaint that such con-
stitutional right has been denied in one of our
trial courts. Some explanation, surely, is due when
a member or members of an appellate court, alleging
that they have proceeded with view "in the light
most favorable to plaintiff," assume to decide a
presented question of law on sole strength of a
crucial part only of an interested witness' testimony.

Now by ensuing declarations I do not mean to
leave impression that it is *necessary* to quote any

---

"I understand that he was called under the statute for cross-
examination [CL 1948, § 617.66 (Stat Ann § 27.420)], but it is
also my understanding of the rule that under those circumstances,
unless there is other testimony to refute whatever he says, the
plaintiff is bound by the testimony as taken from him under cross-
examination."

The judge's conclusion, that plaintiff was "bound" because she
called Valko for cross-examination under the statute, was erroneous.
See *Petrosky* v. *Dziurman,* 367 Mich 539.

portion of young Valko's testimony which tends to place doubt upon his credibility. His credibility went on the block when he took the oath and the stand. Even if he had testified like St. Paul, with no contradiction of what he had to say, with no change of pivotal testimony, and in the total absence of testimony, given by him or by any other witness, which might cast doubt upon his word, I would still take firm position that the credence accorded properly to his statement, that the headlamps of the decedent's car were out, was due properly for determination in the juryroom rather than in the courtroom. Legally he was an interested witness (CLS 1961 § 600.2158 [Stat Ann 1962 Rev § 27A.2158]). That was sufficient to require sending this case to the jury. And there is more.

In the first place, when the investigating officer at the scene asked young Valko for his version of the accident, Valko replied that he started to pass the Reid car and didn't know what happened thereafter. His exact statement, as written into the accident report by the officer and later testified to by the latter, was "No. 1 started to pass No. 3 and doesn't know what happened." I rise here to remark that there was no word that night, by Valko or anyone else, that the lights of the oncoming car were out; a fact which if true would have seared its way into the eyes and the memory of this interested witness-defendant. Too, defendant Reid, the motorist ahead of defendant Valko who should know much about the presence or absence of lighted headlamps on the decedent's approaching car, did not testify. He had been let out on early directed verdict in his favor.

In the second place I find in the record five separate instances where young Valko, confronted with contradictory statements he had made during pretrial deposition, said he either wanted to "change"

his testimony or that he had since recalled crucial matters which warranted such "change." As for his having said nothing to the investigating officer about the claimed absence of lighted headlamps, he explained upon cross-examination that he was "in a daze" at the time the officer asked him for a statement. As to this last one may fairly observe that his hurts do not seem to have prevented his recalling with detail all else that took place prior to the collision. Whatever the then effect of such hurts, his testimony as to the absence of headlights on the decedent's car, and his explanation of failure to tell the officer that night about such absence; all such presented typical jury questions; not questions for decision by the trial judge on motion for directed verdict.

*Woodin* v. *Durfee,* 46 Mich 424, 427, never questioned or overruled, has admonished for more than three-quarters of a century:

"A jury may disbelieve the most positive evidence, even when it stands uncontradicted; and the judge cannot take from them their right of judgment."

The rule applies the more, as it did in *Woodin,* when the party bearing the affirmative of an issue, here contributory negligence,[4] asks the court to hold that he has established such affirmative as a matter of law. See Sunderland, Directing a Verdict for the Party Having the Burden of Proof, 11 Mich L Rev 198, and *Speiser* v. *Randall,* 357 US 513 (78 S Ct 1332, 2 L ed 1460). As the Court said in *Speiser* at p 525:

"In all kinds of litigation it is plain that where the burden of proof lies may be decisive of the

---

[4] That burden was upon these defendants. See former Court Rule 23, § 3a (1945, added in 1958); GCR 1963, 111.7.

outcome. *Cities Service Oil Co.* v. *Dunlap,* 308 US
208 (60 S Ct 201, 84 L ed 196); *United States* v. *New
York, N. H. & H. R. Co.,* 355 US 253 (78 S Ct 212,
2 L ed 2d 247); *Sampson* v. *Channell* (CCA 1), 110 F
2d 754, 758 (128 ALR 394)."

For cases following *Woodin* expressly, see *Hughes*
v. *John Hancock Mutual Life Ins. Co.,* 351 Mich
302, 308; *Rogers* v. *City of Detroit,* 340 Mich 291,
297; *Cebulak* v. *Lewis,* 320 Mich 710, 718, 719 (5
ALR2d 186); *Cuttle* v. *Concordia Mutual Fire In-
surance Co.,* 295 Mich 514, 519; *Green* v. *Detroit
United Railway,* 210 Mich 119, 125; *Rotter* v. *De-
troit United Railway,* 205 Mich 212, 230; *Crampton*
v. *Crampton,* 205 Mich 233, 241; *Schweitzer* v. *Bird,*
204 Mich 333, 341, 342.

There is no need to quote from the foregoing con-
sistent opinions save one, which is selected as rep-
resentative of all. In *Crampton* v. *Crampton, supra,*
these connected passages appear (p 241):

"We have held that a jury may disbelieve the
most positive evidence even when it stands uncon-
tradicted; and the court cannot take from them their
right of judgment. If they return what the court
thinks is a perverse verdict, the court may set it
aside, and order a new trial. *Woodin* v. *Durfee,*
46 Mich 424.

"Referring to the case last cited, Chief Justice
BROOKE, speaking for the court in *Yonkus* v. *McKay,*
186 Mich 203, [211] (Ann Cas 1917E, 458) said:

" 'The administration of justice does not require
the establishment of a rule which compels the jury
to accept as absolute verity every uncontradicted
statement a witness may make.'

"In *Brand* v. *Johnrowe,* 60 Mich 210, referring to
*Woodin* v. *Durfee, supra,* this Court held that the
testimony of a certain witness was for the judgment
of the jury, as they had the right to disbelieve

the positive evidence given by him, and find from circumstances outside of his testimony a different state of facts."

Since 1899 the Supreme Court of the United States has declared adherence to the foregoing. See *Sonnentheil* v. *Christian Moerlein Brewing Company*, 172 US 401, 408, 409 (19 S Ct 233, 43 L ed 492), holding as against similar demand for peremptory instruction that "The mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact." A number of cases were cited in support, p 409. Later, in *Sartor* v. *Arkansas National Gas Corp.*, 321 US 620, 628 (64 S Ct 724, 88 L ed 967), the quotation above was repeated in the same context. Later yet, *Sartor* was made a specific tester of motions for summary judgment in the Federal system. See *Poller* v. *Columbia Broadcasting System, Inc.*, 368 US 464, 467 (82 S Ct 486, 7 L ed 2d 458). Note also quotation in *Sartor* (p 628) of the following portion of the Supreme Court's opinion of *Aetna Life Insurance Company* v. *Ward*, 140 US 76, 88 (11 S Ct 720, 35 L ed 371):

"There are many things sometimes in the conduct of a witness upon the stand, and sometimes in the mode in which his answers are drawn from him through the questioning of counsel, by which a jury are to be guided in determining the weight and credibility of his testimony. That part of every case, such as the one at bar belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men; and so long as we have jury trials they should not be disturbed in their possession of it, except in a case of manifest and extreme abuse of their function."

The judgment entered on directed verdict for defendant Valko should be reversed. The judgment entered on directed verdict for defendant Reid should be reversed, specifically for error of entry thereof on motion following plaintiff's opening statement rather than upon the taking of proof with respect to actionable negligence as alleged against defendant Reid.[5] Plaintiff should have costs.

T. M. KAVANAGH, C. J., and SOURIS, J., concurred with BLACK, J.

---

[5] By this we certainly do not intimate that defendant Reid had no ultimate right to an instructed verdict. We say simply that plaintiff's opening statement was sufficient to justify a trial of plaintiff's charge that defendant Reid, along with defendant Valko, was guilty of actionable negligence. Whether upon retrial, and motion by defendant Reid (at the usual stage) for an instructed verdict, he may be entitled to grant of such motion, is a matter not now before this Court.