## YOUNG *v.* GROENENDAL.

### DECISION OF THE COURT.

1. DEATH—BICYCLIST—STOPPING—DIRECTED VERDICT—EQUALLY DIVIDED COURT.

> Directed verdicts for defendant gasoline station owners in action under wrongful death act by administrator of estate of northbound 13-year-old bicyclist who was killed by eastbound car upon emerging from defendants' driveway without having stopped before entering highway from behind 6′ x 14′ signs defendants had placed in highway right-of-way in violation of statute, is affirmed by an equally divided court (CLS 1961, §§ 247.275, 247.276, 257.652, 257-.657, 600.2922).

---

### REFERENCES FOR POINTS IN HEADNOTES

#### *Decision of the Court*

[1]  5 Am Jur 2d, Appeal and Error § 902.
    38 Am Jur, Negligence §§ 344–361.

#### *Opinion for Affirmance*

[2]  38 Am Jur, Negligence § 177.
[3–5]  38 Am Jur, Negligence § 177.
    39 Am Jur, Nuisances § 200.
[6]  38 Am Jur, Negligence §§ 129, 130.
    39 Am Jur, Nuisances § 73.
[7]  7 Am Jur 2d, Automobiles and Highway Traffic § 173.
    8 Am Jur 2d, Automobiles and Highway Traffic §§ 549, 551.
[8]  8 Am Jur 2d, Automobiles and Highway Traffic §§ 549–551.
    38 Am Jur, Negligence §§ 344–361.

#### *Opinion for Reversal*

[9]  38 Am Jur, Negligence § 348.
[10]  58 Am Jur, Witnesses § 866.
[11]  58 Am Jur, Witnesses § 287.
    22 Am Jur 2d, Death §§ 216, 230.
[12]  38 Am Jur, Negligence § 286.
[13]  38 Am Jur, Negligence §§ 344, 345.
[14, 15]  38 Am Jur, Negligence §§ 286, 290, 291, 293.

OPINION FOR AFFIRMANCE.

T. E. BRENNAN, C. J., and DETHMERS and KELLY, JJ.

2. NUISANCE — DEFENSES — CONTRIBUTORY NEGLIGENCE — CAUSE OF DAMAGE — NEGLIGENCE.

*Plaintiff's denomination of defendants' action or inaction, in placing and keeping 6' x 14' signs on the highway right-of-way in violation of a statute, as a nuisance rather than negligence does not change the law as to the availability of the defense of contributory negligence, for the court will look through the label to the nature of the causes of damage in determining the availability of the defense of contributory negligence (CLS 1961, §§ 247.275, 247.276).*

3. SAME — DEFENSES — CONTRIBUTORY NEGLIGENCE — DAMAGE TO REALTY — DUTY TO EXERCISE REASONABLE CARE.

*Contributory negligence is not a defense in an action for damages arising from the maintenance of a condition interfering with proper use of plaintiff's realty; however, some courts have held in nuisance cases where interference with the use of realty is not involved that plaintiff is under a duty to exercise reasonable care.*

4. SAME—NEGLIGENCE—ABSOLUTE NUISANCE—DEFENSE—CONTRIBUTORY NEGLIGENCE.

*Courts have drawn a distinction between "negligent" nuisance, where recovery is authorized if it is shown defendant acted negligently, and "absolute" nuisance, contributory negligence being a defense in the former but not the latter.*

5. SAME—DEFENSE—CONTRIBUTORY NEGLIGENCE—LABEL OF NUISANCE.

*Contributory negligence is a defense to a nuisance that had its origin in negligence and whenever a nuisance has its origin in negligence one may not avert the consequence of his own contributory negligence by affixing to the negligence of the wrongdoer the label of nuisance.*

6. SAME—NEGLIGENCE—SIGNS ON HIGHWAYS—VIOLATION OF STATUTE.

*Placement of 6' x 14' signs on highway right-of-way near defendants' gasoline station in such a way as to obscure view of the highway from defendants' driveway gave rise to a nuisance that had its origin in negligence, since defendants were not wilfully inflicting a wrong, and such a placement was not calculated to cause injury nor was it reasonably foreseeable*

that it would do so even though in violation of the statute
(CLS 1961, §§ 247.275, 247.276).

7. AUTOMOBILES—BICYCLISTS—HIGHWAYS—PRIVATE    DRIVEWAYS—
STOPPING.

Bicyclists are subject to the same requirements as motorists in-
sofar as stopping before entering a highway from a private
driveway is concerned; hence, 13-year-old bicyclist who rode
from gasoline station driveway onto the highway, without
stopping, was guilty of negligence as a matter of law (CLS
1961, §§ 257.652, 257.657).

8. DEATH—CONTRIBUTORY NEGLIGENCE—BICYCLIST—SIGNS IN VIOLA-
TION OF STATUTE.

A directed verdict for defendant gasoline station owners was
properly entered in action under the wrongful death act by
administrator of the estate of a 13-year-old bicyclist who was
killed by a car upon emerging from defendants' driveway
without having stopped before entering the highway from
behind 6' x 14' signs defendants had placed in highway right-
of-way in violation of statute, since the bicyclist was guilty of
contributory negligence as a matter of law (CLS 1961, §§ 247-
.275, 247.276, 257.652, 257.657, 600.2922).


FOR REVERSAL.

BLACK, T. M. KAVANAGH, and ADAMS, JJ.

9. NUISANCE — DEFENSES — CONTRIBUTORY NEGLIGENCE — DI-
RECTED VERDICT — EVIDENCE — INTERESTED WITNESS.

Directing a verdict for defendant on the exclusive strength of
the credible or incredible testimony of an interested witness,
the assigned reason being contributory negligence, should not
be done.

10. WITNESSES—INTERESTED   WITNESSES—CREDIBILITY—TESTIMONY
—UNIMPEACHED WITNESSES—QUESTION OF FACT.

The jury has no right to arbitrarily disregard the positive testi-
mony of unimpeached and uncontradicted witnesses, but where
the witness is interested in the result of the action, his credi-
bility should be submitted to the jury as a question of fact.

11. NUISANCE — TESTIMONY — INTERESTED WITNESS — WRONGFUL
DEATH ACT — CONTRIBUTION.

The driver of the death car, who is the only person able to supply
direct and positive testimony as to the conduct of bicyclist
just before his death, is a legally interested witness in litiga-

tion brought under the wrongful death act by decedent's father in which codefendant is charged with maintaining a public nuisanace proximately causing injury to decedent, because a verdict for both defendants would relieve the witness of possible liability for contribution (CLS 1961, § 600.2922).

12. NEGLIGENCE—BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE.
The burden of persuasion respecting contributory negligence rests on the party asserting it, and in all kinds of litigation, where the burden of proof lies may be decisive of the outcome of the action.

13. JUDGMENT—DIRECTED VERDICT—EVIDENCE—INTERESTED WITNESS.
Judgment entered on an instructed verdict is error where it was given on the exclusive strength of a witness who was interested in the outcome of the action.

14. NUISANCE—CONTRIBUTORY NEGLIGENCE—PRESUMPTION OF DUE CARE—REBUTTING A PRESUMPTION—APPEAL AND ERROR.
Plaintiff is entitled to the aid of the presumption of due care where defendant's proof of contributory negligence presents a doubtful or uncertain circumstantial question of fact for the jury, and directing a verdict for defendant on the basis of testimony of an interested witness concerning contributory negligence is error, where such testimony is too uncertain and indefinite for a matter-of-law ouster from the action of the presumption of due care.

15. DEATH—PRESUMPTION OF DUE CARE—INFERENCES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
Presumption of due care is not overcome as a matter of law where testimony of an interested witness gives rise to permissible inferences that bicyclist violated a statute by failing to stop his bicycle before riding it onto the highway from the sidewalk and that the proximate cause of bicyclist's death was the illegally installed and maintained signs of defendants between the curb and the sidewalk, nor where there is ample evidence of causal negligence on part of defendants; thus, the presumption of due care should have required presenting to the jury, with proper instructions, the issue of contributory negligence (CLS 1961, §§ 247.275, 247.276, 257.652, 257.657, 600.2922).

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, P. J., and McGregor and J. H. Gillis, JJ.,

affirming Oakland, Dondero (Stanton G.), J. Submitted June 4, 1969. (Calendar No. 5, Docket No. 52,149.) Decided September 3, 1969.

10 Mich App 112, affirmed by an equally divided court.

Complaint by James H. Young, administrator of the estate of Paul Robert Young, deceased, against Robert W. Groenendal and Harry H. Fetterly for wrongful death. Judgment on directed verdict for defendants. Plaintiff appealed to Court of Appeals. Affirmed. Plaintiff appeals. Affirmed, by an equally divided court.

· *Wallace D. McLay,* for plaintiff. ·

*Plunkett, Cooney, Rutt & Peacock (David J. Watters, Jr.,* of counsel), for defendants.

Dethmers, J. (*for affirmance*). On October 12, 1962, plaintiff's decedent, a 13-year-old boy, was riding a bicycle in a westerly direction on the sidewalk on the south side of a paved highway. The highway right-of-way extended to the south edge of that walk. Between the walk and the south edge of the pavement was a grassy area on which defendants, owners of an adjacent gasoline station, had placed 3 large sandwich-type signs, over 6 feet high, which extended south, perpendicular to the highway, for about 14 feet, from a point beginning about 5 feet south of the pavement. East of the signs a driveway ran from the gasoline station north to the paved highway. When the bicyclist reached that driveway he turned north and rode, without stopping, onto the pavement of the highway. A motorist, traveling east on that highway, collided with the

bicycle and its rider was killed. For that the boy's
father brought this action under the wrongful death
act (CLS 1961, § 600.2922 [Stat Ann 1962 Rev
§ 27A.2922]).

Plaintiff's original complaint charged defendant
gasoline station owners with negligence which was
a proximate cause of the accident in maintaining
the signs on the highway right-of-way in violation
of statute. Defendants filed an answer including in
their defense that of the bicyclist's contributory neg-
ligence in having violated the statute requiring him
to stop the bicycle on the driveway before entering
the paved portion of the highway. Plaintiff then
amended his complaint to change the charge against
defendants from negligence to public nuisance.

At the conclusion of plaintiff's proofs, on trial, the
circuit judge directed a verdict in favor of said
defendants of no cause for action on the ground of
the bicyclist's contributory negligence as a matter
of law. Plaintiff's appeal therefrom to the Court
of Appeals resulted in affirmance there on that same
ground. Plaintiff is now here on leave granted to
appeal. 381 Mich 784.

Plaintiff's chief contention is that contributory
negligence is no defense to an action for damages
resulting from defendants' maintaining a public
nuisance, and that defendants' placing and keeping
the signs on the highway right-of-way was in viola-
tion of statute (CLS 1961, §§ 247.275, 247.276 [Stat
Ann 1969 Cum Supp §§ 9.1405, 9.1406]) and, hence,
a public nuisance which was a proximate cause of the
accident because the signs obstructed the vision and
prevented the motorist and the bicyclist from seeing
each other soon enough to avoid the accident.

A problem of labels is involved. Can denominat-
ing defendants' action or inaction a nuisance, rather
than negligence, change the law as to availability of

the defense of contributory negligence, or will the
court peer through the label to the nature of the
causes of the damage to determine the question? We
think the latter is and should be the prevailing rule.
An interesting pertinent discussion of the subject
is to be found at 73 ALR2d 1378, and particularly
at page 1380, where the following appears:

"The rule that contributory negligence is **not a**
defense to a charge of nuisance apparently devel-
oped primarily in connection with actions involving
charges of the maintenance of a condition interfering
with the proper use of the plaintiff's realty. In such
cases, the early courts, always tender of rights in
land, rejected the argument that a man's use of his
property should be conditioned or limited by the
necessity of avoiding harm from his neighbor's
wrongful acts, and it is apparently still the rule in
most jurisdictions that contributory negligence is
not a defense in an action for damages arising from
such a nuisance.

"With the extension of the nuisance label to a wide
variety of other types of harm, astute plaintiffs soon
advanced the argument that if the cause of action
could be brought under the nuisance umbrella, the
rule that contributory negligence is not a defense
must also be applied, even though the action might
be for personal injury or chattel damage having only
the most remote, if any, connection with the use of
realty, and might involve circumstances more usually
presented in an ordinary negligence action.

"To meet this argument and to avoid permitting
or denying recovery to the negligent plaintiff only on
the basis of the label attached to the cause of action,
many courts began to draw a distinction between
what may be called 'negligent' nuisance, where re-
covery would be authorized only if it could be shown
that defendant had acted negligently, and 'absolute'
nuisances, holding that contributory negligence was
a defense in the former but not in the latter cases.

"However, attempts to clearly define this distinction have not been too successful and in several cases the courts have apparently taken the view that it should be abandoned, holding that in all nuisance cases, at least where interference with the use of realty is not involved, the plaintiff is under a duty of exercising reasonable care, although of course the question as to what constitutes reasonable care under the circumstances will vary according to the nature of the defendant's wrongful act and the type of condition created thereby."

This is not an action for damage to plaintiff's land caused by the condition or use of defendants' land or of the right-of-way which the cases have termed "absolute" nuisance. It seems to us that this falls, rather, into the class described in *Denny* v. *Garavaglia* (1952), 333 Mich 317, as a nuisance that has its origin in negligence. In that case this Court said, *inter alia:*

"It is the general rule that contributory negligence is a defense to a nuisance that has its origin in negligence. See *McFarlane* v. *City of Niagara Falls* (1928), 247 NY 340 (160 NE 391, 57 ALR 1). In the above case, it was said (pp 344, 348):

" 'Not a little confusion runs through the reports as to the effect of contributory negligence upon liability for nuisance. Statements appropriate enough in their application to nuisances of one class have been thoughtlessly transferred to nuisances of another. There has been forgetfulness at times that forms of action have been abolished and that liability is dependent upon the facts and not upon the name. Confining ourselves now to the necessities of the case before us, we hold that whenever a nuisance has its origin in negligence, one may not avert the consequences of his own contributory negligence by affixing to the negligence of the wrongdoer the label of a nuisance.' "

In the instant case defendants were not wilfully inflicting a wrong. While unlawful placing of the signs constituted negligence because in violation of statute, it was not necessarily calculated to cause injury or damages to others nor does the record indicate that this was reasonably foreseeable. Pictures in evidence would appear to the contrary.

CLS 1961, § 257.657 (Stat Ann 1968 Rev § 9.2357), places the same duties and requirements on persons riding bicycles as on motor vehicle operators and CLS 1961, § 257.652 (Stat Ann 1968 Rev § 9.2352), requires that drivers about to enter or cross a highway from a private driveway shall come to a full stop before entering the highway and yield to traffic approaching on the highway. As established by the uncontradicted testimony, the bicyclist did not comply with this statutory requirement. He was, accordingly, guilty of contributory negligence as a matter of law. *Rasmussen* v. *McEachron* (1936), 274 Mich 200. See, also, *Zabawa* v. *Eshenroeder* (1946), 313 Mich 555, in which plaintiff bicyclist was denied recovery for damages resulting from being struck by a motor vehicle because of his own contributory negligence.

The trial court was correct in directing verdicts in favor of defendants, the gasoline station owners.

Affirmed. Costs to defendants.

T. E. Brennan, C. J., and Kelly, J., concurred with Dethmers, J.

Black, J. (*for reversal*). My vote is cast for reversal and entry of order for new trial.

I have written before that the practice of directing a verdict for the defendant on exclusive strength of the credible or incredible testimony of an interested witness, the assigned reason being contribu-

tory negligence, should be arrested summarily.  See *Wolfgram* v. *Valko* (1965), 375 Mich 421, 432.  There a directed verdict for the defendant was upheld by equal division of the Court.  The same question is here again.

In *Wolfgram* (p 438) I called attention to the pertinent rule of *Sonnentheil* v. *Christian Moerlein Brewing Company* (1899), 172 US 401 (19 S Ct 233, 43 L Ed 492), and to the Supreme Court's continued pursuit of that rule in instances where summary toss-out of damage actions has been sought.  The rule (*Sonnentheil* at 408, 409):

"Notwithstanding the testimony of these witnesses was so positive to the effect that they accepted the trust, we are of opinion that it was not improper to submit the question to the jury.  In its charge the court instructed the jury that the creditors who accepted the deed of trust must themselves be free from the taint of fraud, and the question of fraud was so connected with that of acceptance that it was possible for the jury to have found that the accepting creditors had knowledge of the fraud at the time of their acceptance.  They were all apparently interested in sustaining the deed, and in denying all knowledge of a fraudulent intent, and while the jury has no right to arbitrarily disregard the positive testimony of unimpeached and uncontradicted witnesses, *Lomer* v. *Meeker* (1862), 25 NY 361, 363; *Elwood* v. *Western Union Telegraph Company* (1871), 45 NY 549, 553 (6 Am Rep 140), the very courts that lay down this rule qualify it by saying the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact.  [Citing cases.]"

A month after *Wolfgram* was decided Justice Souris employed *Sonnentheil* in similar vein.  See *Durant* v. *Stahlin (Appeal re Van Dusen, Elliott,*

*Romney)* (1965), 375 Mich 628, 640, 651. I would apply it to this appeal since all of us, along with Judges J. H. GILLIS and McGREGOR of the appellate panel (*Young* v. *Groenendal,* 10 Mich App 112, 118), are agreed that "the only person able to supply any direct and positive testimony concerning Paul Young's conduct just prior to the collision was Barnes."

Mr. Barnes was the driver of the death car. Since a verdict in favor of the defendants would relieve him from possible liability over, for contribution, he was legally interested in the result of the trial. His status as an interested witness was, therefore, more pronounced than that shown in the *Sonnentheil Case,* the witnesses there having been declared only "apparently" interested. Here Mr. Barnes' concern was real, made so by his own testimony.

The evidentiary facts adduced here closely parallel those which the Court reviewed in *Petersen* v. *Lundin* (1926), 236 Mich 590, where the decedent was not seen by the defendant motorist "before he was in front of the automobile," and also in *Green* v. *Wallace* (1965), 376 Mich 113, where the defendant motorist did not see the plaintiff pedestrian until he was approximately 3 feet from the car. To that I add here, as quite in point on the subject of burden of proof, the following passage appearing in *Green* v. *Wallace* at 124:

"Aside from the above it is important to note again that the burden of persuasion respecting contributory negligence rests now on the party asserting it (*City of Dearborn* v. *Bacila* [1958], 353 Mich 99, 117; former Court Rule 23, § 3a, effective June 1, 1958; GCR 1963, 111.7); also that (*Speiser* v. *Randall* [1958], 357 US 513, 525 [78 S Ct 1332, 2 L Ed 2d 1460]):

" 'In all kinds of litigation it is plain that where the burden of proof lies may be decisive of the out-

come.  *Cities Service Oil Company* v. *Dunlap* (1939),
308 US 208 (60 S Ct 201, 84 L Ed 196) ; *United States*
v. *New York, New Haven & Hartford R. Company*
(1957), 355 US 253 (78 S Ct 212, 2 L Ed 2d 247);
*Sampson* v. *Channell* (CA 1, 1940), 110 F2d 754, 758
(128 ALR 394).' "*

I conclude that Division 2 erred in upholding this
judgment, entered as it was upon an instructed ver-
dict.  But there is still another reason for so con-
cluding, one not considered in the opinion proposed
for affirmance.  It is that Mr Barnes' testimony con-
cerning contributory negligence was simply too in-
definite and uncertain for matter-of-law ouster from
the case of the presumption of due care.  One need
but refer in support to the rules set forth in *Gillett*
v. *Michigan United Traction Co.* (1919), 205 Mich
410 and to this passage, taken in *Hill* v. *Harbor Steel
& Supply Corporation* (1965), 374 Mich 194, 208, 209
from *Mack* v. *Precast Industries, Inc.* (1963), 369
Mich 439, 454:

"I agree with Justice DETHMERS that no reversible
error resulted from denial of plaintiff's request to
charge that her decedent was presumptively free
from contributory negligence.  The request was not
phrased in accordance with what apprehendedly is
the instructionally correct rule for cases like this,
set forth in durable *Gillett* v. *Michigan United Trac-
tion Co.* (1919), 205 Mich 410, 421.  Aside from that,
I must register disagreement with the conclusion
that former Court Rule No 23, § 3a (1945), now GCR
1963, 111.7, has eliminated need for instruction, when

---

* *Rasmussen* v. *McEachron* (1936), 274 Mich 200, upon which
Division 2 relied in holding that Mr. Barnes' credibility was not in
issue for the purposes of defendants' motion, is neither opposed nor
in point.  There a presumably disinterested eyewitness (the defend-
ant's sister), having an amply precedent view of all causal events, pro-
vided testimony sufficient to overcome the presumption of due care.
It should be noted, however, that the *Rasmussen Case* was decided
years before this Court lifted, from plaintiffs in negligence, the bur-
den of *disproof* of contributory negligence.

such instruction is otherwise appropriate, upon the
subject of presumed due care. Conceivably, many
cases will come to this Court where, even though the
defendant now bears the burden of proving contrib-
utory negligence, the plaintiff on properly couched
request in a jury case, or on judicial consideration
of a nonjury case, will be entitled to aid of the pre-
sumption. Surely that will be true when, as here,
the defendant's proof of such negligence presents a
doubtful, or uncertainly circumstantial question of
fact for the jury, and certainly it will be true when
the defendant presents no proof of contributory neg-
ligence."

Now, to settle this disputatious question whether
the defendants have established as a matter of law
their pleaded affirmative defense of contributory
negligence, let us read together all of Mr. Barnes'
testimony which, connectedly, bears on that ques-
tion. Mr. Barnes was a retired Ford Motor em-
ployee, 74 years old. He testified:

Direct examination, by Mr. McLay:

"*Q.* You were approaching a Sunoco gas station.
Did you see anything unusual?

"*A.* Yes.

"*Q.* What did you see?

"*A.* Well, I seen a boy coming out of the gas sta-
tion on a bicycle.

"*Q.* Where was this boy when you first saw him?

"*A.* Well, he was coming about—I would imagine
—about 6 or 7 feet, maybe not that, I don't know,
from—

"*Q.* I can't understand you.

"He was 6 or 7 feet from where?

"*A.* When I seen him, when I first seen him he was
probably, oh, I don't know, 5–6 feet from the curb,
you know.

"*Q.* When you say, 'the curb', you mean the edge
of the concrete?

"*A.* Yes, the concrete road.

"*Q.* This is when you first saw him is that correct?

"*A.* Yes.

"*Q.* Now, was he—what was he on? Was he on the sidewalk or what when you saw him?

"*A.* He wasn't on the road. He was on—coming down in the gas station.

"*Q.* The gas station driveway?

"*A.* Yes.

"*Q.* Did you see him when he was back farther?

"*A.* There were signs.

"*Mr. Watters:* Your Honor, I would object to this. I think it would call for a conclusion.

"*The Court:* That would be conclusionary.

"All right.

"*Q.* (*By Mr. McLay*) You say you first saw him 5 or 6 feet from the edge of the road, is that correct?

"*A.* Yes.

"*Q.* Was there anything else that you observed in the immediate vicinity at that time?

"*A.* Well—

"*Q.* Would you speak up, Mr. Barnes? The jury can't hear you and I am having difficulty, too.

"*A.* Well, what was the question?

"*Q.* Did you see any signs at the scene of this accident prior to the accident?

"*A.* Well, I don't understand just what you mean.

"*Q.* Were there any signs there?

"*A.* Oh, yes.

"*Q.* Where were those signs?

"*A.* Well, the signs were running along the middle of it, all along (indicating).

"*Q.* Along—can you tell us where they were in reference to where you first saw Paul Young?

"*A.* Well, he was just about coming just down near the edge of the signs when I seen him. And I come in there, and the signs and him—the edge of the sign and him was about together. I don't know just what—

"*Q.* Where were the signs in reference to the driveway Paul Young was on when you saw him?

"*A.* Well, the sign, like if—(indicating).

"*Q.* Does this picture honestly depict the signs you have been telling us about? I am referring to exhibit L.

"*A.* Yes.

"*Q.* Now, would Paul Young have been on this sidewalk or—strike that—on the driveway which is behind those signs?

"*A.* Yes, he was behind those signs when I seen him.

"*Q.* In other words, when you saw him, he was coming out from the sign closest to the road; is that correct?

"*A.* Yes.

"*Q.* What did you do at that time?

"*A.* Well, when I seen him, I thought I could turn. I turned out of the road to the next lane.

"*Q.* Did you stop?

"*A.* Well, I kind of stopped there and then I looked over and I—I don't know just what I did do. But I drove along then I started to drive out of it, back into the other one, and then I came to I shouldn't do that; and I—so, I just stopped.

"*Q.* Do you recall having seen these signs prior to the incident of this accident?

"*A.* Oh, yes, I had seen the signs.

"*Q.* How long had they been there, if you can recall, prior to this accident?

"*A.* How long? Oh, probably 2 or 3 years, anyway; maybe not; I don't know just—

"*Mr. McLay:* I have no other questions.

"*Cross-Examination by Mr. Watters:*

"*Q.* Now, as I understand it, Mr. Barnes, you saw the boy, he was on his bicycle to your right; is that right?

"*A.* Yes.

"*Q.* All right. After you first saw him, did he come right in front of you on the bicycle?

"*A.* He came right out, out—he was coming—all I—I don't know, I just turned and as soon as I seen him, tried to get away.

"*Q.* All right.

"Was he pumping pretty fast on the bike when you saw him come out of there?

"*A.* Well, I couldn't tell whether that—he sure was pumping it, probably, no question of that. I couldn't—

"*Q.* 'No question of that.' All right.

"Did he come out straight?

"*A.* Yes.

"*Q.* Right out into the road?

"*A.* Right into the road, right straight out.

"*Q.* And was he pumping from the time you first saw him until the time that you hit?

"*A.* Well, I couldn't say.

"*Q.* Was he moving all this time?

"*A.* Yes, he was moving; moving fast.

"*Q.* Do you know where which part of your car came into contact with the bike?

"*A.* I think it was around the front of the wheel.

"*Q.* Which one, right or left?

"*A.* The right.

"*Q.* Right wheel. Okay.

"*A.* Around in that vicinity there, I don't know just where.

"*Q.* Now, before the time that you—that the impact occurred—I lost that one.

"The accident happened in this right lane of the pavement, did it (indicating)?

"*A.* Yes.

"*Q.* Before the time of the impact, did you—were you able to turn your car to the left and move over toward the left?

"*A.* Well, that I couldn't say. It's done so quick and I don't know.

"*Q.* Okay."

Having arrayed Mr. Barnes' testimony beside the
opinion proposed for affirmance, I am quite unable
to identify the "undisputed testimony" which is said
to establish conclusively that the decedent did not
stop obedient to the statute (CLS 1961, § 257.652)
before pedaling out from the sidewalk, where he had
been riding, toward the paved portion of the road.
The boy indeed may not have stopped, as alleged.
But Mr. Barnes did not see him until he and his bike
had cleared the defendants' signs and the record is
barren of proof that the boy was negligent as charged
prior to his coming into the view of Mr. Barnes.

I concede of course that Mr. Barnes' testimony
provides a permissible inference—no, a persuasive-
ly strong inference—that the boy violated the stat-
ute. But that inference was for exclusive acceptance
or rejection by the jury, not for matter-of-law ap-
plication by the trial judge or any appellate judge.

Mr. Barnes' testimony provides still another per-
missible inference. It is that the proximate cause
of the boy's failure to see the approaching car in
time to avoid the impending collision, and of the mo-
torist's precedent failure to see the boy riding out
on his bicycle, was due to the fact that the defend-
ants had illegally installed and were illegally main-
taining, between the curb and the sidewalk, the three
side-by-side advertising signs that are depicted by
photographic exhibit E, an exhibit State Police Offi-
cer Weeks produced and identified.

My considered view is that the presumption of due
care was not in this case overcome as a matter of
law and, there being ample evidence of causal neg-
ligence on the part of the defendants, that it—the
presumption—called for submission to the jury of

the issue of contributory negligence with instructions guided by the *Gillett Case, supra.*

T. M. KAVANAGH and ADAMS, JJ., concurred with BLACK, J.

T. G. KAVANAGH, J., did not sit.