ATTORNEY GENERAL [ON RELATION OF JOHN M. LONGYEAR] v. JOHN B. WEIMER ET AL., SUPERVISORS OF THE COUNTY OF IRON AND v. SOLOMON D. HOLLISTER, CLERK.

*Statutes—Constitutional provision as to object being expressed in title, construed—Organization of counties—Act forming county and organizing townships therein, not obnoxious to such provision—The requisite number of townships and a board of supervisors, essential to the existence of a county—Legislature may organize county at any time, and provide for special election for, or appointment by governor of, county officers—Power to order such election derived from the general power to organize counties.*

1. The purpose of the constitutional provision that "no law shall embrace more than one object, which shall be expressed in its title" [sec. 20, Art. 4] was to prevent "the practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits:" *People v. Mahaney,* 13 Mich. 494.

2. It was not designed, by the section cited, to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, thus multiplying their numbers; but it was intended that in every case the proposed measure should stand upon its own merits, and that the Legislature should be fairly notified of its design when required to pass upon it.

3. By an act of the Legislature a county was formed out of three *organized* townships, and other territory which by the same act was organized into two townships.

> *Held*, that the act was not obnoxious to the section cited; that while there was no necessary connection between the formation of the county and the organization of the townships, the latter action was germane to the former; that a county in Michigan, can only be made to exist when it has the requisite number of townships and a board of supervisors the members of which are chosen therefrom: *People v. Maynard,* 15 Mich. 463.

4. The Legislature may organize a county at any time it deems it expedient so to do, and if prior to the holding of the biennial election provided for in the Constitution, it has power to provide for a special election of county officers, or for their appointment by the governor until the holding of such biennial election.

5. The power of the Legislature to order such special election is derived from its general power to organize counties, and not from section 3, art. 10 of the Constitution; and it has as much power to provide for the provisional appointment of county officers by the governor, as to order a special election for that purpose.

Informations in nature of *quo warranto.* Argued January 28, 1886. Decided February 3, 1886.

County organization held valid and writs dismissed. The facts are stated in the opinions.

*Ball & Hanscom* [of counsel for Attorney General], for relator.

Art. 35, Session Laws of 1885, is in conflict with section 20, Art. 4 of the Constitution. It has more than one object, viz.: the organization of a county, and of two townships. The purpose of this constitutional provision has been considerably discussed by this Court : *People v. Mahaney,* 13 Mich. 495. There was no necessary connection between the formation of the county and of the townships. The latter might be organized without the new county, and vice versa. The one might have been very desirable, while the other was not and had the measures come up separately it is by no means certain they would have passed. It is impossible, in such a bill, that each measure should receive the independent consideration of each member of the Legislature contemplated by the Constitution. Section 5 of the act provides for the appointment of the county officers by the governor

to hold their offices from August 1, 1885, to January 1, 1887, and this appointment is their sole authority for holding. This is in conflict with section 3, Art. 10 Const., which provides for biennial elections for such officers : *Keeler v. Robertson,* 27 Mich. 122; *People v. Hurlbut,* 24 Mich. 44. The provision that the county officers shall enter into their offices " on and after August 1, 1885," is void ; the act did not take effect until September 18 of that year. How then are county officers to be chosen, and when are they to enter on the discharge of their duties ? There is no time fixed for an election in the act nor do the general statutes provide for it. The board of supervisors may order an election to fill vacancies : How. Stat. §§ 138, 141, or in some cases the governor : sec. 140. The Constitution [Art. 4, § 37] empowers the Legislature to declare the cases in which an office shall be deemed vacant, and it has so declared [How. Stat. § 649] and this is not one of the cases specified. The act purports to be one to *organize* a county, not to set territory off as an unorganized county to be thereafter organized. It fails to provide for setting the machinery of the county in motion, hence is not valid for any purpose. There is no organized county, no board of supervisors, no county authorities until county officers have been chosen. "An organized county, under our Constitution, signifies a county having within itself the necessary means for performing its functions, independently of any other county, with its lawful officers and machinery for carrying out the powers and performing the duties belonging to that class of corporate bodies " : *People v. Maynard,* 15 Mich. 468. " In each *organized* county *there shall be* a sheriff", etc.: Const. Art. 10, § 3 ; *People v. McGuire,* 32 Cal. 140 ; *O'Shea v. Twohig,* 9 Texas, 336; *Clark v. Goss,* 12 Texas, 395. Section, 9 of act 35, limits the amount to be expended by the board of supervisors for rental or construction of county buildings to $600 per annum until five years after act takes effect, except as specified, and section 18 forbids the payment to county officers, during the same period, in the aggregate more than $2,000 per annum. These restrictions are void : Const. Art. 10, §§ 6–9. Inasmuch as the act would not have been passed without these restrictive provisions, their invalidity destroys the entire act : *Quinlon v. Rogers,* 12 Mich. 168; *Northwestern Manufacturing Co. v. Chambers, a Judge of Wayne Circuit,* 58 Mich. 381; Cooley's Const. Lim., 4th ed. pp. 216, 217, and notes.

Section 10, of act 35, is also void for that it attempts to empower a sheriff and clerk appointed by the governor to

provide a place for holding the circuit court and for county officers.

*R. A. Montgomery* and *Cahill & Ostrander*, for respondents.

If this act for the organization of Iron county had taken strips of territory off from organized towns, and left it without township organization, it would be open to the criticism made in *People v. Maynard*, 15 Mich. 463. Having taken these strips from other townships, it was absolutely necessary to attach them to other towns, or organize them into new ones to secure to electors places to vote and the other advantages of township organization. This being so, sections 11 to 15, inclusive, were not only not foreign to the title of the act, but a necessary part of it. Whatever provisions are requisite to make a statute valid and effectual to accomplish its purpose, not only *may* but *ought* to be included in the same act. Is the provision relating to the appointment of county officers by the governor, void? The Constitution, no doubt, contemplates that such officers shall be elective, but suppose an emergency to arise between the biennial elections and a county finds itself organized and existing, and yet without officers, never having had any, would the clause " and as often as a vacancy shall happen" apply to such a situation? If so, and we think it would, the Legislature must provide for their appointment provisionally in the organizing act, or leave the county without officers until the next biennial election. Art. 10 Const. does not apply to the case of counties newly organized and has never been so construed by the Legislature. It authorizes no elections, except general ones, and those to fill vacancies. Yet the Legislature has generally provided for special elections in acts for organizing counties, by virtue of its general power to organize counties. There is no express provision of the Constitution covering the case and the Legislature is left to its discretion. It was not the primary object of section 3, Art., 10 Const., to secure the election of county officers by the people, but the purpose was to designate what officers each county should have and fix their term of office. It is only incidentally stated that they shall be chosen by the electors. It cannot be urged with any force that it is contrary to the spirit of our Constitution to allow county officers to be appointed: *People v. Hurlbut*, 24 Mich. 80; *People v. Mahaney*, 13 Mich. 482.

Counties are local subdivisions of the State created by the sovereign power of the State of its own sovereign will with-

out the particular solicitation, consent or concurrent actibn of the people who inhabit them : 1 Dill. on Munic. Cor. § 23. Their officers are the agencies through which the State collects its revenues, administers justice and executes the laws. The duties performed for their counties are less in extent and inferior in dignity to those which they perform for the State, and basing the argument on this ground this Court has held that a Judge of Probate is a State and not a county officer : *Douvielle v. Manistee Supervisors*, 40 Mich. 585. It is no invasion of the right of the people to elect their county officers, to provide by law for having them filled, temporarily, and until the regular election can be had by appointment of the executive : *Sprague v. Brown*, 40 Wis. 618.

SHERWOOD, J. On the third day of April, 1885, the Legislature passed " An act to organize the county of Iron, and the townships of Bates and Mastodon, in said county of Iron." See Act No. 35, p. 32, Laws 1885.

The act did not take effect until September 18, 1885.

The territory embraced within the limits of the proposed new county consists of 33½ surveyed townships, and was detached from the counties of Marquette and Menominee. The larger part of this territory was, however, included in the three townships of Felch, Crystal Falls, and Iron River, in Marquette county, and were taken therefrom intact, and without change in their organizations as they before existed. The remaining territory of the new county was taken from other organized townships in the counties of Marquette and Menominee, and would have been without township organizations but for sections 11 and 13 of the act under consideration. By these sections the townships of Bates and Mastodon are organized, and section 15 annexes the remaining portion of unorganized territory to the township of Iron River.

The two new townships were organized by the election of officers therefor, on the second Monday in July, 1885, and who have since entered upon the discharge of their duties, but not until after the act took effect.

Section 5 of the act provides for the appointment of the county officers by the Governor, who are to hold their offices from the first day of August, 1885, until the first day of January, 1887.

The governor made his appointment of the county officers on the tenth day of April, 1885, for the term commencing at the time the act took effect in September following. On the nineteenth day of September, 1885, the several county officers, so appointed qualified, and entered upon the discharge of their several and respective duties, and ever since have acted as such.

The township officers, in the three organized townships of Felch, Crystal Falls and Iron River, each of which at the time of the passage of the act in question, had all been elected at the annual election held in April previous, and all had qualified and continued in the discharge of their official duties.

On the nineteenth day of September, 1885, at the request of the supervisors of Crystal Falls and Iron River townships, the county clerk called a special meeting of the board of supervisors of Iron county ; and, pursuant to said call, a special meeting of said board was duly held at the village of Iron River the twenty-ninth day of September, 1885, at which meeting there were present the supervisors from each of the townships of Bates, Crystal Falls, Felch, Iron River and Mastodon, at which meeting Louis A. Fredericks was elected chairman of said board ; and the penal sum of the bond of the county treasurer was fixed, and his bond presented and approved, as were also the bonds of the county clerk, register of deeds, register in chancery, and bonds of other county officers required to be approved by the board. Standing committees were appointed, and the salaries of the county officers fixed. Some of the bills presented were allowed, and orders drawn to pay the same ; among the orders there being one for payment for transcribing the records of the office of register of deeds of Marquette county, as provided in said act. By act No. 184 of the Session Laws of 1885 of the State of Michigan, the counties of Delta and Iron were made to form a representative district, entitled to one representative. By act No. 183 of said session, the counties of Iron, Menominee and Marquette were made to constitute one senatorial district in the State. The board of supervisors at

said special session provided offices for a portion of said county officers appointed as aforesaid, a court-room for the sessions of the circuit court; and the record further shows that at least two of the three supervisors of the towns of Felch, Crystal Falls and Iron River have voted in said board for each resolution and motion passed by said board; that a term of the circuit court has been held at the county-seat in said new county ; and that several judgments and decrees were rendered at said session of the court.

The proceeding in this case is an information in the nature of a quo warranto, filed by the attorney general, on relation of John M. Longyear, against the members of the board of supervisors and the clerk of Iron county, respectively. The object of the proceeding is more especially to test the validity of the act under which the county is organized ; and, if the act shall be found valid, to determine whether the act is sufficient to organize the new county without further legislation. A copy of the information will be found in the margin.[1]

The respondents all appeared to the writ, except John H.

---

[1] *State of Michigan—In the Supreme Court.*

Moses Taggart, attorney general of the State of Michigan, who sues for the people in the said State in this behalf, comes here into the Supreme Court on the twentieth day of October, A. D. 1885, upon the relation of John M. Longyear, according to the form of the statute in such case made and provided; gives the said Court here to understand and be informed that John B. Weimer, Christopher T. Roberts, John H. Buddle, Louis A. Fredericks and Charles Oleson, of the county of Marquette, for a space of twenty days and upwards now last past, have assumed to act as a board of supervisors of the so-called " County of Iron," and during said time have held, used, and exercised, and do still hold, use, and exercise, authority as such board of supervisors, without any legal election, appointment warrant, or authority whatsoever therefor; and the said John B. Weimer, Christopher T. Roberts, John H. Buddle, Louis A. Fredericks and Charles Oleson pretend and claim that said county of Iron consists of certain territory forming part of the counties of Marquette and Menominee, and is a body corporate; and they have during the time aforesaid assumed, and do still assume, to act and exercise authority as the board of supervisors thereof; whereas, in fact, said pretended county of Iron has not been legally incorporated, and neither said John B. Weimer, Christopher T. Roberts, John H. Buddle, Louis A. Fredericks and Charles Oleson, nor any other person, have any right or authority to act as the board of supervisors of such pretended county. And the said attorney general further gives the court to understand and be informed that said John B. Weimer is the supervisor of the township of Iron River, in the county of Marquette. that said Christopher T. Rob-

Buddle, supervisor of the new township of Mastodon, who has since left the township, and filed their joint and several pleas to the information filed, setting up the facts, among others, above set forth; to which pleas the attorney general filed a general demurrer, and upon the record thus made up the case is before us for consideration.

It is claimed by the relator that the act is in conflict with the constitution, and therefore void; that the law, as passed, embraces more than one object: that it was not only to organize the county of Iron, but also to form the new townships of Bates and Mastodon. It is not claimed that the object of the act, and the legislation had upon the subject mentioned, are broader than the titles; but it is claimed that it was not necessary to the formation of this new county that any new township should be made, for there were already three, in the territory designated within the county limits, duly organized.

We do not think the act in question obnoxious to section 20 of article 4 of the constitution.

The object of this section is clearly and well stated by Mr.

erts is supervisor of the township of Crystal Falls, in the county of Marquette; and that said Louis A. Fredericks is supervisor of the township of Metropolitan, in the county of Marquette; that said John H. Buddle assumes to be and pretends to act as the supervisor of the pretended township of Mastodon, in said county of Iron; and that said Charles Oleson assumes and pretends to act as the supervisor of the pretended township of Bates, in said county of Iron, without any legal election, appointment, authority, or warrant whatever, and that said township of Mastodon and said township of Bates have not been legally incorporated or organized, and that neither said John H. Buddle nor Charles Oleson, nor any other persons, are authorized to act or exercise authority as supervisors of said pretended townships. And the said attorney general therefore says that the said John B. Weimer, Christopher T. Roberts, John H. Buddle, Louis A. Fredericks and Charles Oleson do unlawfully act and exercise authority as a board of supervisors of a county of this State, without lawful authority, without such county having been duly and lawfully incorporated, to wit, at the county of Marquette aforesaid, in contempt of the people of the State of Michigan, and to their great damage and prejudice. Whereupon the said attorney general prays the advice of the Court here in the premises, and for due process of law against the said John B. Weimer, Christopher T. Roberts, John H. Buddle, Louis A. Fredericks and Charles Oleson in this behalf, to be made to answer to the said people by what warrant they claim to hold, use and exercise the authority of such board of supervisors, and to exercise the corporate powers aforesaid.

MOSES TAGGART, Attorney General.

BALL & HANSCOM, of counsel.

Justice COOLEY, in the case of *People v. Mahaney*, 13 Mich. 494, which was to prevent " the practice of bringing together into one bill subjects diverse in their nature, having no necessary connection, with a view to combine in their favor the advocates of all, and thus secure the passage of several measures, no one of which could succeed upon its own merits." It was not designed by this clause to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, and thus multiplying their numbers; but it was intended that in every case the proposed measure should stand upon its own merits, and that the Legislature should be fairly notified of its design when required to pass upon it : *Board Sup'rs v. Heenan*, 2 Minn. 336.

While it may be said there was no necessary connection between the formation of the county and the organization of the new townships, still the connection is a natural one, and the latter is clearly germane to the former. The county is composed alone of townships, and neither our constitution nor laws contemplate the existence of the latter except in connection with the former, and the county can only be made to exist when it has the requisite number of townships; and the connection of all townships with the county, after such requisite number has been organized, is precisely the same as with the others. Indeed, the first step to be taken in the regular organization of a county is the formation of the townships necessary for that purpose. A county cannot be organized without having a board of supervisors (*People v. Maynard*, 15 Mich. 463), and that can only be obtained through the action of organized townships.

It is further claimed by the relator that the act of the Legislature in question "is not valid for any purpose, because it fails to provide sufficiently for the organization of the county,—for setting the machinery of the county government in motion ;" that there is no provision in the act for electing its officers, and no time fixed when they shall enter upon the duties of their several offices.

It was competent for the Legislature to pass a law for the organization of the county of Iron. No limitation has been

placed upon the power of the Legislature in this regard. After a county has been organized in pursuance of its directions, it is quite clear that the constitution requires that its officers must be elected ; but we think it is equally clear that a county may be organized at any time the Legislature may deem it expedient so to do ; and, if done before holding the biennial election provided for in the constitution, it is competent for the Legislature to provide for a special election at which the county officers may be chosen, or to authorize the Governor of the State to appoint such officers to fill the offices until the time arrives designated by the constitution for holding the general election. Section 3 of article 10 was never intended to apply to the organization of a county between the times fixed for holding the biennial elections. The constitution only authorizes biennial elections, and those to fill vacancies in office, and leaves the offices to be filled provisionally, in cases of the organization of counties between the biennial elections, either by holding a special election for that purpose, or by appointment by the Governor, as the Legislature may deem best ; and that is all that has been done in the present case.

The Legislature has generally provided for special elections in acts for the organization of new counties. This has been done by virtue of its general power to organize counties, and not because of any authority contained in section 3 of article 10 of the constitution. The Legislature has as much power to provide for the appointment of the county officers by the Governor as it has to order a special election at which they may be chosen by the electors. The county offices are created by the constitution, and in the organization of new counties, until they are filled at the general biennial election, the mode and manner of selecting the officers is necessarily provisional and temporary, and discretionary with the Legislature.

We do not deem it necessary to consider the question raised as to the legality of organizations of the new townships, as they do not necessarily affect the main question desired to be settled in this case, or necessarily affect the action of the board of supervisors in the discharge of its

administrative and legislative duties; it being conceded that a sufficient number of townships have legal organizations necessary for the county organization, and to constitute a legal board of supervisors.

We do not think the other questions raised and discussed have any legal bearing upon the validity of the county organization, or the action taken by the county officers. It only remains to say that we must hold the county of Iron has a legal organization, and the demurrer to the respondent's pleas must be overruled, and the proceedings under the writ dismissed, but without costs.

The other Justices concurred.