MAKI *v.* CITY OF EAST TAWAS

OPINION OF THE COURT

1. STATUTES—SCOPE OF TITLE—CONSTITUTIONAL LAW.

The Michigan Supreme Court has often held that the constitutional stricture on statutory enactments, that an act shall not exceed the scope of its title, was not a hollow formality (Const 1963, art 4, § 24).

2. STATUTES — CONSTITUTIONAL LAW — ONE-OBJECT LIMITATION — NEGLIGENCE — TORTS — GOVERNMENTAL IMMUNITY.

The title of the governmental immunity statute indicates that the act should create immunity for governmental acts of *negligence*, however, the act itself in a certain section creates immunity for the much broader area of governmental torts; thus, to hold that section of the statute constitutional, the Michigan Supreme Court would be required to reduce the scope of the government's immunity from immunity for *all* torts to immunity from "torts caused by negligence," however, such an interpretation would require the Court to engage in judicial legislation and such interpretation, in the name of preserving a statute's constitutionality, would exhaust the constitutional prohibition that no law shall embrace more than one object which shall be expressed in its title of all meaning (Const 1963, art 4, § 24; MCLA § 691.1407).

3. NEGLIGENCE—TORTS—WORDS AND PHRASES.

"Negligence" and "tort" remain legal terms of art and, while their precise definitions are often elusive, they are not synonymous.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4–8]  50 Am Jur, Statutes § 159 *et seq.*
[2, 4–6, 10, 11, 14, 15]  16 Am Jur 2d, Constitutional Law §§ 335, 465–477, 483, 484.
[3]  38 Am Jur, Negligence § 2.
    58 Am Jur, Torts §§ 2, 3.
[7, 9]  50 Am Jur, Statutes § 223.
[9, 10]  50 Am Jur, Statutes § 474.
[12, 15]  39 Am Jur, Nuisances §§ 94, 95.
[13]  39 Am Jur, Nuisances § 200.
[14]  39 Am Jur, Nuisances § 23.

4. STATUTES — CONSTITUTIONAL LAW — GOVERNMENTAL IMMUNITY — NEGLIGENCE — TORTS.

The section of the governmental immunity statute, which provides that all governmental agencies shall be immune from tort liability in all cases wherein said government agency is engaged in the exercise and discharge of a governmental function, exceeds the scope of its title and is therefore unconstitutional and invalid (MCLA § 691.1407).

5. STATUTES—TORTS—GOVERNMENTAL IMMUNITY—CONSTITUTIONAL LAW.

The section of the governmental immunity statute, which provides that all governmental agencies shall be immune from tort liability in all cases wherein said government agency is engaged in the exercise and discharge of a governmental function, is independent of the remainder of that act and can, therefore, be severed from the act, but the remainder of the act is otherwise complete in itself and capable of being carried out without reference to the unconstitutional section (MCLA §§ 8.5, 691.1407).

OPINION CONCURRING IN AFFIRMANCE

BLACK, J.

See Headnote 4.

DISSENTING OPINION

T. E. BRENNAN, and WILLIAMS, JJ.

6. STATUTES—TITLE OF ACT—CONSTITUTIONAL LAW—ONE-OBJECT LIMITATION—TORTS—NEGLIGENCE—GOVERNMENTAL IMMUNITY.

*The section of an act which grants immunity to governmental agencies for all tort liability when engaged in governmental functions embraces an object not expressed in its title, which states that the act grants immunity to governmental agencies for injuries to persons or property caused by negligence, in violation of a constitutional provision that no law shall embrace more than one object, which shall be expressed in its title, as the term "tort" is clearly broader in scope than the term "negligence", for tort includes intentional torts and strict liability torts as well as those based on negligence (Const 1963, art 4, § 24; MCLA § 691.1407).*

7. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT—CONSTITUTIONAL LAW.

*It is incumbent upon the Michigan Supreme Court to sustain a statute's constitutionality by construction of the language to preserve the intent the legislature manifested in enacting the statute if that can properly be done.*

8. STATUTES — SCOPE OF TITLE — CONSTRUCTION — CONSTITUTIONAL LAW.

*The Michigan Supreme Court, when confronted with the situation of a statutory provision exceeding the scope of its title, has adopted a narrow construction of the statute to preserve the statute's constitutionality (Const 1963, art 4, § 24).*

9. STATUTES — CONSTRUCTION — PARTIAL INVALIDITY — LEGISLATIVE INTENT.

*The rule of partial invalidity must be followed by construing an act's provisions narrowly to conform to the title where such construction works to fulfill legislative intent.*

10. TORTS — NEGLIGENCE — GOVERNMENTAL IMMUNITY — STATUTES —CONSTRUCTION — PARTIAL INVALIDITY — SEVERABILITY.

*The term "tort" in a section of a statute granting immunity to governmental agencies for all tort liability when engaged in governmental functions should be construed to refer to torts caused by negligent conduct by applying the rule of partial invalidity and the statutory rule on severability (MCLA §§ 8.5, 691.1407).*

11. NUISANCE—COMMON LAW—GOVERNMENTAL IMMUNITY—TORTS—STATUTES.

*Nuisance is a judge-made exception from the common-law rule of governmental immunity from torts and the language of the statute granting immunity to governmental agencies for all tort liability caused by negligent conduct when engaged in governmental functions does not alter the liability of governmental agencies for nuisance (MCLA § 691.1407).*

12. NUISANCE—MUNICIPAL GARBAGE DUMP—NEGLIGENCE.

*Nuisance in the manner of operation of a municipal garbage dump was a nuisance arising out of negligent conduct where the jury found that there was no intentional nuisance and the municipality broke no laws in maintaining its dump.*

13. NUISANCE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

*Contributory negligence is a good defense to nuisances based on negligent conduct but not for other classes of nuisances.*

14. NUISANCE—TORTS—STRICT LIABILITY IN TORT—GOVERNMENTAL IMMUNITY.

*Nuisances which are based on intentional conduct, illegal conduct or conduct, such as that characterized as ultrahazardous, for which strict liability in tort is imposed, constitute a class of nuisances for which there is no governmental tort immunity.*

15. MUNICIPAL CORPORATIONS — NUISANCE — MUNICIPAL GARBAGE DUMP — GOVERNMENTAL IMMUNITY—TORTS—NEGLIGENCE.

*Action against a municipality on the theory of nuisance for personal injuries incurred at its garbage dump is barred by virtue of a statute which grants immunity to governmental agencies for all tort liability caused by negligent conduct when engaged in governmental functions where the jury found that there was no intentional nuisance and the municipality broke no laws in maintaining its dump (MCLA § 691.1407).*

Appeal from Court of Appeals, Division 3, Levin, P. J., and Holbrook and Danhof, JJ., affirming Iosco, Allan C. Miller, J. Submitted January 8, 1971. (No. 17 January Term 1971, Docket No. 52,539.) Decided July 7, 1971.

18 Mich App 109 affirmed.

Complaint by Leo V. Maki against the City of East Tawas for the loss of an eye resulting from an explosion at the municipal dump. Judgment for plaintiff. Defendant appealed to the Court of Appeals. Plaintiff appealed to the Court of Appeals from denial of his motion for a new trial. Affirmed. Defendant appeals. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Michael N. Freel,* City Attorney, and *Egloff, Mainolfi, Taylor, McGraw & Collison,* for defendant.

T. G. KAVANAGH, J. In December of 1965, the plaintiff, Leo Maki, went to the defendant's city

dump to discard some refuse. He dumped the refuse at an area designated by the attendant city employee and then remained to talk to the attendant. While inquiring about a bicycle part, a small explosion occurred in a nearby refuse fire and the plaintiff was struck in the left eye by what appeared to be a .22 caliber bullet.

The plaintiff later lost the use of his left eye and he sued the defendant city for his ensuing disability.

The plaintiff originally based his claim upon negligence and counts of gross negligence and nuisance were later added. In answer, the city filed a motion for accelerated judgment asserting that 1964 PA 1964, No 170, § 7 (MCLA § 691.1407; Stat Ann 1969 Rev § 3.996 [107]) held them immune from such a suit. The circuit judge denied the defendant's motion stating that the foresaid § 7 was unconstitutional as it did not fall within the object embraced in the title of the act. With the defendant thus stripped of immunity and after the plaintiff had voluntarily struck from his complaint his allegations of negligence and gross negligence the case proceeded to a jury trial solely on the theory of nuisance. The jury returned a verdict of $12,500 for the plaintiff and found unanimously on a special finding that the city had not maintained an intentional nuisance but did find on a vote of ten to two the the city had maintained a nuisance arising "out of the manner of operation".

The Court of Appeals affirmed the trial judge and the defendant appealed to this Court.

The governmental immunity statute, PA 1964, No 170 § 7 (MCLA § 691.1407; Stat Ann 1969 Rev § 3.996 [107]) states:

"Except as in this act otherwise provided, all governmental agencies shall be immune from *tort*

*liability* in all cases wherein said government agency is engaged in the exercise and discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is hereby affirmed." (Emphasis added.)

The plaintiff claims that the created immunity of § 7 encompasses on its face immunity from *all* tort liability and if such is the scope of § 7, plaintiff claims it would create a broader and more inclusive governmental immunity than is expressed in the title to PA 1964, No 170:

"An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in a governmental function, for injuries to property and persons *caused by negligence;* to define and limit such liability; to define and limit the liability of the state when engaged in a proprietary function; to authorize the purchase of liability insurance to protect against loss arising out of such liability; to provide for defending certain claims made against public officers and paying damages sought or awarded against them; and to repeal certain acts and parts of acts." (Emphasis supplied.)

If the act's created immunity from "tort liability" is broader in reach than the title's immunity "for injuries to property and persons caused by *negligence*", the plaintiff claims § 7 would violate the prohibition of Const 1963, art 4, § 24 that no law shall embrace more than one object which shall be expressed in its title.

In 1888 we quoted the observations made in Justice COOLEY's treatise on Constitutional limitations on our duty in determining whether an act was with-

in the scope of its title. As in other areas his comments are still relevant today:

" 'As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might, with entire propriety, have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title. They are invested with no dispensing power. The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so.' " *In the Matter of Charles Hauck* (1888), 70 Mich 396, 403.

We have often held that this constitutional stricture on statutory enactments was not a hollow formality. *MacLean* v. *State Board of Control for Vocational Education* (1940), 294 Mich. 45 synopsizes our consistent adherence to the principle that an act shall not exceed the scope of its title. We said in *MacLean*: pp 48, 49:

"The constitutional provision was designed mainly to prevent the legislature from passing laws not fully understood, *Thomas* v. *Collins* [1885], 58 Mich 64; it was intended that the legislature, in passing an act, should be fairly notified of its design, *Attorney General, ex rel. Longyear,* v. *Weiner* [1886], 59 Mich 580; and that legislatures and parties interested might understand from the title that only provisions germane to the object therein expressed would be enacted, *Blades* v. *Board of Water Commissioners of Detroit* [1899], 122 Mich 366; and to avoid bringing into one bill subjects diverse in their nature and having no necessary connection, but

with a view to combining in their favor the advocates of all—or what is commonly spoken of as logrolling in legislation. *State Mutual Rodded Fire Ins. Co.* v. *Foster* [1934], 267 Mich 118."

The title to PA 1964, No 170 indicates that the act should create immunity for governmental acts of *negligence.* However, the act itself, in § 7, creates immunity for the much broader area of governmental torts. It is apparent from even a cursory examination of any legal encyclopedia or dictionary that an action based on "negligence" is a species of a generic action based in torts. As the trial judge pointed out, the headings in *Prosser on Torts* refer to actions based on nuisance, direct trespass, assault and battery, false arrest, deceit, defamation, abuse of process, malicious prosecution and economic duress—all of which are tort actions apart from negligence and all of which might be brought against a governmental body.

It would appear, then, that to hold § 7 constitutional we would be required to reduce the scope of the government's § 7 immunity from immunity for *all* "torts" to immunity from "torts caused by negligence". Such an interpretation, however would require this Court to engage in judicial legislation.[1]

Such interpretation in the name of preserving a statute's constitutionality[2] would exhaust Const 1963, art 4, § 24[3] of all meaning. "Negligence" and "tort" remain legal terms of art and while their

---

[1] We cannot say that the legislature clearly understood the impact of the distinction between "torts" and "negligence" and if they were not apprised of the different scope of the terms "tort" and "negligence" we cannot determine how they would have voted had they known the difference.

[2] See for example *State Bar of Michigan* v *Lansing* (1960), 361 Mich 185 and *Continental Motors Corporation* v. *Muskegon Twp.* (1965), 376 Mich 170.

[3] "No law shall embrace more than one object, which shall be expressed in its title. * * * "

precise definitions are often elusive they are not synonymous.[4]    To treat them as synonymous now would be reminiscent of Lewis Carroll's Humpty-Dumpty as he scornfully chastised Alice "when I use a word it means just what I choose it to mean—neither more nor less." We decline to overtly engage in such activity.    Rather our duty and our problem

"is to construe what Congress has written.    After all, Congress expresses its purpose by words.    It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort." *Cases of Jam* v. *United States* (1951), 340 US 593, 596 (71 S Ct 515, 518; 95 L Ed 566, 570).    See also *People* v. *Blumrich* (1914), 183 Mich 133, 137.

So construing, we hold that § 7 exceeds the scope of its title and is therefore unconstitutional and invalid.    We further hold that § 7 is independent of the remainder of PA 1964, No 170 and can therefore be severed from the act.[5]    The remainder of PA 1964, No 170 is otherwise complete in itself and capable of being carried out without reference to the unconstitutional § 7.[6]

In this posture it is unnecessary to decide what effect the nature of this nuisance recovery (*i.e.,* "manner of operation") has on municipal immunity.[7]

---

[4] The action in the present case was based upon nuisance and as 39 Am Jur, Nuisances, § 4, p 282; 65 CJS, Negligence, § 1(10), p 452 and *King* v. *Columbian Carbon Co.* (CA5, 1945), 152 F2d 636 all say in effect "the terms 'nuisance' and 'negligence' are not synonymous." (*King* v. *Columbian Carbon Co* at p 638).    Both are species of torts.

[5] MCLA § 8.5 (Stat Ann 1969 Rev § 2.216).    See also *People* v *McMurchy* (1930), 249 Mich 147 and *Klatt* v. *Wayne Probate Judge* (1909), 159 Mich 203.

[6] *Rohan* v. *Detroit Racing Association* (1946), 314 Mich 326, *Manistee & N. R. Co.* v. *Commissioner of Railroads* (1898), 118 Mich 349.

[7] See *Williams* v. *Detroit* (1961), 364 Mich 231.

Accordingly we affirm the jury's verdict.
No costs, a public question being involved.

T. M. KAVANAGH, C. J., and ADAMS and SWAINSON,
JJ., concurred with T. G. KAVANAGH, J.

BLACK, J. (*concurring in affirmance*). When the
defendant municipal corporation applied for leave
to review the decision of Division 3 (granted Feb-
ruary 10, 1970; 383 Mich 766), I concluded upon
review of the papers submitted and the opinions
below that Judges DANHOF and HOLBROOK had rea-
soned out the right response for those combined and
obviously difficult questions of statutory construc-
tion and constitutional validity which their opinion
portrays (*Maki* v. *City of East Tawas* [1969], 18
Mich App 109). As I recall most here came then to
similar conclusion, yet as recommended to us by
one of our Commissioners we granted the applica-
tion on account of the widespread importance of
such questions. In a word, it was deemed best that
the defendant-stated question,

"Was plaintiff's cause of action barred by provi-
sions of Act 170 of PA 1964, being MSA 3.996(101)
*et seq*?"

should come to decision by this Court in the light
of the specific facts of the case as specially deter-
mined by the jury's verdict.

The appeal was submitted January 8, 1971. Since
then two opinions submitted by two Justices have
been submitted to us for consideration. One as I
read it stands for affirmance of the judgment of
affirmance which the Court of Appeals entered. An-
other disagrees, both as to reasoning and result.
Being of continuing view that the DANHOF-HOL-
BROOK opinion above is the most acceptable of the

three that are available for endorsement, and realizing that this Court chronically has too many opinions of given cases, I have decided to adopt as my own that part of the DANHOF-HOLBROOK opinion which commences on page 119 with the sentence "We come now to the constitutional question.", and continuing through to the end of that opinion on page 125.

The above will satisfy the requirements of Const 1963, art 6, § 6. On strength thereof I vote to affirm, without an award of costs.

WILLIAMS, J. (*dissenting.*) This action brought by the plaintiff to recover for personal injuries incurred while he was at a municipal garbage dump operated by the City of East Tawas raises two questions. First, pursuant to Article 4, § 24 of the Michigan Constitution, restricting an act of the legislature to the scope of its title, should § 7 of the governmental immunity statute, which grants immunity to governmental agencies for *all tort liability* when engaged in governmental functions,[1] be reduced to the scope of the act's title which says the act grants immunity to governmental agencies for injuries to persons or property *caused by negligence*[2] or should § 7 be held unconstitutional in *toto*?

---

[1] The governmental immunity statute, PA 1964, No 170, § 7 (MCLA § 691.1407; Stat Ann 1969 Rev § 3.996[107]) states:

"Except as in this act otherwise provided, all governmental agencies shall be immune from *tort liability* in all cases wherein said government agency is engaged in the exercise and discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is hereby affirmed." (Emphasis added.)

[2] The title of the governmental immunity statute, PA 1964, No 170 (MCLA § T-691.1401; Stat Ann 1968 Rev § T-3.996[101]) reads:

"An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, when engaged in a governmental function, for injuries to property and persons *caused by negligence;* to define and limit such liability;

Second, if § 7 is held to mean only torts caused by negligence, is a nuisance in the manner of the operation of a municipal dump within the scope of governmental immunity for such negligent torts or does the nuisance label take it outside the reach of immunity for injuries to persons caused by negligence?

I

Article 4, § 24 of the Michigan Constitution states: "No law shall embrace more than one object, which shall be expressed in its title." There is no question that § 7 embraces an object not expressed in its title in violation of Article 4, § 24. The term "tort" contained in § 7 is clearly broader in scope than the term "negligence" embodied in the title of the act for, as the Court of Appeals and the trial judge noted, tort includes intentional torts and strict liability torts as well as those based on negligence.

The difficult problem is whether the term "tort" in § 7 should be construed narrowly to mean only torts caused by negligence so that it is no broader in scope than the title of the act.

It is important to note that we are not dealing with the common-law rule of immunity which is a judge-made rule. Here, we have a statute to construe and it is incumbent upon us as to sustain the statute's constitutionality by construction of the language to preserve the intent the legislature manifested in enacting the statute if that can properly be done.

to define and limit the liability of the state when engaged in a proprietary function; to authorize the purchase of liability insurance to protect against loss arising out of such liability; to provide for defending certain claims made against public officers and paying damages sought or awarded against them; and to repeal certain acts and parts of acts." (Emphasis added.)

When this Court has been confronted on other occasions with the situation of a statutory provision exceeding the scope of its title, we have adopted a narrow construction of the statute to preserve the statute's constitutionality. *Scott* v. *Alsar Company* (1953), 336 Mich 532 where the workmen's compensation act was construed as not applying to independent contractors; *Arnold* v. *Ogle Construction Company* (1952), 333 Mich 652 where a certain provision of the workmen's compensation act was construed to refer only to accidental injuries to conform to the scope of the title; *State Mutual Rodded Fire Insurance Co.* v. *Foster* (1934), 267 Mich 118 where the part of an act dealing with sureties was held unconstitutional since the title made no reference to sureties; and *Booth* v. *Eddy* (1878), 38 Mich 245 where the term "assignees" was construed narrowly to conform to the scope of the title. See also *MacLean* v. *State Board of Control for Vocational Education* (1940), 294 Mich 45; and *People* v. *Smith* (1929), 246 Mich 393.

What, in effect, these precedents say is that we must follow the rule of partial invalidity by construing an act's provisions narrowly to conform to the title where such construction works to fulfill legislative intent. The language of *Arnold* v. *Ogle Construction Company, supra,* 663, 664 is particularly illuminating on this point:

" * * * The application of such rule requires that the provisions of part 2 of the workmen's compensation law, in question here, * * * shall be interpreted as within the scope of the title and not repugnant thereto, and consequently as permitting the payment of compensation for disability resulting from accidental injuries only. If the legislature in the enactment of said amendments had intended such drastic change in part 2, as is now claimed was

made, I think that such purpose would have been expressed in clear and unequivocal terms by an affirmative statement to that effect. Likewise the reference to 'accidental injury' would have been deleted from the title. The omission of such action furnishes cogent proof that it was not the purpose of the legislature to strike from part 2 the requirement that disability of an employee should not be compensable thereunder unless caused by an accidental injury only    *    *    *    ."

It is appropriate to inquire here whether reading § 7 as giving immunity for negligent torts carries out the legislative intent. The background leading up to the enactment of the statute here in question clearly indicates that the legislature desired to restore immunity for municipalities in the performance of governmental functions.[3] Torts arising out

---

[3] In *Williams* v. *Detroit* (1931), 364 Mich 231, this Court abolished the common-law rule of governmental immunity for "municipal corporations". Prior to *Williams* the law provided almost complete immunity for all levels and agencies of state and local government while engaged in *governmental* functions. Judge-made exceptions from the immunity rule existed where a governmental body engaged in a *proprietary* function, maintained a nuisance or caused a direct trespasser act in connection with the construction or maintenance of public works. By legislation there were also exceptions for injuries resulting from defective maintenance of public roads and from negligent operation of autos and airplanes.

Baum, *Governmental Immunity in Michigan*, 44 Michigan State Bar Journal (May 1965) 37, 38, 39. The author, Judge Baum, is a Wayne County Circuit Judge and was the trial judge in *Williams* v. *Detroit* (1961), 364 Mich 231.

*Williams* was part of a general trend of decisions across the country abolishing common-law governmental immunity for tort. (Prosser, *Torts* [3d ed], § 125, pp 1012, 1013.) Due to the broad tenor of the no immunity language in *Williams* and, no doubt, because of the nationwide trend against governmental immunity in which some state courts terminated immunity for all levels and branches of state government, the question in the cases following *Williams* was whether the scope of the no immunity rule would be broadened. In *McDowell* v. *State Highway Commissioner* (1961), 365 Mich 268 this Court held a person injured because of the defective condition of a state highway could not sue the State Highway Department since the legislature in allowing suits against lower levels of government in such circumstances had manifested an intention to continue immunity for state government and its agents. In *Sayers* v. *School District No. 1, Fractional* (1962), 366 Mich 217, this Court held that school dis-

of negligence are certainly the most common type of tort. Whether the legislature wanted to give immunity for torts based on strict liability or intentional conduct is unclear, but what is clear is that they certainly wanted governmental immunity for that which is headnoted in the title, namely torts arising out of negligent conduct. To declare § 7 null and void in its entirety would judicially defeat this obvious legislative purpose. Therefore, we apply the rule of partial invalidity and hold that the term "tort" in § 7 shall be construed to refer to torts caused by negligent conduct.

In so doing we pay heed to the spirit of the statutory rule on severability which states:

"If any portion of an act or the application thereof to any person or circumstances shall be found to

tricts were immune from tort liability. In *Lewis* v. *Genesee County* (1963), 370 Mich 110, this Court held that both Genesee County and the Genesee County Board of Social Welfare which operated a hospital were agents and instrumentalities of state government and thus immune from liability for the negligent acts of the hospital employees.

In contrast to this narrow reading of the term "municipal corporation," this Court expanded the judge-made exception of proprietary function. In *Munson* v. *County of Menominee* (1963), 371 Mich 504, we held that in leasing space to the state, a county was engaged in a proprietary function, and, as such was liable for negligently maintaining the space. In *Carlisi* v. *City of Marysville* (1964), 373 Mich 198, a city was liable for the drowning of two children by negligently failing to post no swimming signs by its water filtration plant on the ground that a water filtration plant is a proprietary function.

Then in 1965 this Court shifted ground in *Myers* v. *Genesee County Auditor* (1965), 375 Mich 1 and expanded the *Williams* umbrella to include counties, townships and villages. It was at this time and against this background that the legislature stepped in and enacted the statute at issue in the case before us today in an attempt to make uniform the tort liability of state and local governmental agencies. The statute did three important things. It established immunity for all state and local governments engaged in governmental functions thus restoring immunity to municipal corporations; it created exceptions for three types of activities namely defective maintenance of roads, negligent operation of motor vehicles and defective maintenance of public buildings (which was the situation in *Williams*); and third it adopted the judge-made rule of no immunity when a government is engaged in a proprietary function but defined proprietary narrowly as "any activity conducted primarily for profit".

be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application * * * ." (MCLA § 8.5 [Stat Ann 1968 Rev § 2.216].)

## II.

The next question is whether the jury's finding that the defendant maintained a nuisance in the manner of operation of its municipal dump places the City of East Tawas outside of the scope of immunity for negligent torts which occur during the performance of a governmental function.

Nuisance is a judge-made exception from the common-law rule of governmental immunity. The statute here in question does not alter the liability of governmental agencies for nuisance. This conclusion is based upon the following language of § 7:

"Except as otherwise provided herein, this act shall not be construed as modifying * * * the immunity of the state * * * as it existed heretofore * * * ."

In *Denny* v. *Garavaglia* (1952), 333 Mich 317, 331, this Court classified nuisances resulting in personal injury into three classes. The first class consists of nuisances based on illegal conduct; the second class involves nuisances based on conduct intended to bring about conditions which are in fact a nuisance; and the third class comprises nuisances based on negligent conduct. Since the jury found that there was no intentional nuisance[4] and since the City of East

---

[4] At one time garbage disposal areas were held to be *per se* nuisances but these cases all involved "piggeries" inundating neighboring lands with offensive odors. A piggery is a method of disposing of garbage by feeding the garbage to pigs. *Trowbridge* v. *City of Lansing* (1927), 237 Mich 402; *Albaugh* v. *Abbott* (1931), 253 Mich 588; and see *Kobs* v. *Zehnder* (1949), 326 Mich 202. Garbage disposal areas other than piggeries are not *per se* nuisances but instead

Tawas broke no laws in maintaining its dump, what we have here where the jury found a nuisance in the manner of operation is a nuisance arising out of negligent conduct.

Our Court has had the opportunity to illuminate the relationship between nuisance and negligence in a series of cases where we have held that contributory negligence is a good defense to nuisances based on negligent conduct but not for the other two classes of nuisances. *Denny* v. *Garavaglia, supra; Dahl* v. *Glover* (1956), 344 Mich 639; *Young* v. *Groenendal* (1969), 382 Mich 456; and *Awad* v. *McColgan* (1959), 357 Mich 386.

In our most recent opinion on the subject of the nuisance exception from governmental immunity, *Buckeye Union Fire Insurance Company* v. *Michigan* (1970), 383 Mich 630, 635, Justice ADAMS, writing for a unanimous Court, wrote:

> "The *Royston, Denny, Dahl* and *Young* cases involved claims for personal injuries and are within that class of cases described as nuisance having its origin in negligence and as to which contributory negligence is a defense."

*Buckeye* itself, however, did not involve a nuisance based on negligent conduct. Rather the nuisance was a "condition" (p 636), an old, open, dilapidated and unoccupied building which was a fire hazard, declared dangerous and ordered demolished by the city. Any negligence involved was strictly incidental and this Court denied immunity to the state, which had acquired the property by tax sale (p 638).

The distinction between *Buckeye* and *Maki* was clearly indicated by Justice ADAMS in speaking as follows of *Buckeye*:

---

are nuisances only if they are unreasonable in the light of surrounding land use and manner of operation. *Smith* v. *Ann Arbor* (1942), 303 Mich 476.

"Negligence, which is antecedent to and responsible for the nuisance, is not our concern here even though the nuisance in this case may have been created by negligent acts." (p 635.)

In *Maki* the jury specially and specifically found that the nuisance was in the "manner of operation," or in other words nuisance based on negligent operation. Presumably this had reference to nuisance based on one or more of such things as no restrictions on dumping of live ammunition, lighting trash fires during dumping hours, or allowing people to wander about the entire dumping area. In other words, in *Buckeye* there was no way to get rid of the nuisance, which was a condition, except to abolish the building, whereas in *Maki* the jury verdict implied that the dump if properly "operated" would not be a nuisance.

When a nuisance based on negligent conduct is at issue, our Court has treated the action as a negligence action. In our latest opinion on the matter, *Young* v. *Groenendal, supra,* 461, 462, Justice Dethmers wrote:

"A problem of labels is involved. Can denominating defendants' action or inaction a nuisance, rather than negligence, change the law as to availability of the defense of contributory negligence, or will the court peer through the label to the nature of the causes of the damage to determine the question? We think the latter is and should be the prevailing rule."

If we failed to peer through the label and treated a nuisance based on negligent conduct as a separate cause of action for which there was no governmental immunity, we would make the statutory rule of immunity for negligent torts a nullity since plaintiffs would simply cast any negligence action in the

form of a nuisance based on negligent conduct and thus avoid governmental immunity.

By finding that a nuisance based on negligent conduct does not escape the immunity provision of § 7, we do not terminate the nuisance exception from the immunity rule. Nuisances which are based on intentional conduct, illegal conduct or conduct, such as that characterized as ultrahazardous, for which strict liability in tort is imposed, constitute a class of nuisances for which there is no governmental tort immunity.

Arguably, the plaintiff could still hold the City of East Tawas liable on the theory that operating a municipal garbage dump is a proprietary function. The immunity statute defines a proprietary function narrowly as "any activity conducted primarily for profit." Although the City of East Tawas charges non-residents a fee to use the dump, quite clearly the primary purpose for the dump is a health and safety one of providing residents a place to dispose of their garbage and trash. Moreover, a pre-governmental immunity statute case, *Curry* v. *Highland Park* (1928), 242 Mich 614, found that maintaining a garbage dump was a governmental function.

## III.

On the facts of this case we find that the plaintiff, Leo Maki, is barred from suing the City of East Tawas by virtue of § 7's immunity provision. In finding that a nuisance in the manner of operation of a municipal dump is a nuisance based on the absence of reasonable care which comes within the scope of § 7's immunity for negligent torts occurring in the performance of a governmental function, let it not be inferred that this Court is biased either way on governmental tort immunity. This is a case

where the legislature has spoken in an area where it properly has jurisdiction and the legislative intention should prevail.

T. E. Brennan, J., concurred with Williams, J.