663 N.W.2d 473 (2003)
PHARMACEUTICAL RESEARCH & MANUFACTURERS OF AMERICA, Plaintiff-Appellant, and
T.G., P.C., by her guardian and next friend, H.C., D.H., Alliance for Mentally III of Michigan, Mental Health Association of Michigan, Michigan Association for Children with Emotional Disorders, and Michigan Protection & Advocacy Services, Inc., Intervenors, Plaintiffs-Appellees,
v.
DEPARTMENT OF COMMUNITY HEALTH, Defendant-Appellee.
Docket No. 123002, COA No. 238862.
Supreme Court of Michigan.
June 27, 2003.
On order of the Court, the application for leave to appeal the December 13, 2002 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should now be reviewed by this Court. During the remand proceedings ordered by the Court of Appeals, the Ingham Circuit Court shall expedite its consideration of this matter and shall schedule a prompt trial or a prompt hearing on dispositive motions. The motion for leave to file a brief amici curiae is GRANTED.
We do not retain jurisdiction.
MARKMAN, J., dissents and states as follows:
I respectfully dissent and would grant expedited leave to appeal in this case. In light of the following, I am not prepared to conclude, without further consideration on the part of this Court, that the trial court abused its discretion in granting a preliminary injunction pending trial on the implementation of new Department of Community Health (DCH) regulations.
(1) 2001 Public Act 60, § 2204, pursuant to which the DCH acted in imposing new drug preauthorization and rebate rules, contains a "legislative veto" provision that is indistinguishable from the provision determined to be unconstitutional in Blank v. Dep't of Corrections, 462 Mich. 103, 611 N.W.2d 530 (2000). Indeed, it is arguably even more constitutionally objectionable. Whereas the "legislative veto" in Blank identified a constitutionally recognized entity as the final actor in the veto process, i.e., the "Legislature," this act's "legislative veto" identifies individual members of that Legislature.
(2) 2001 PA 60 requires the DCH to secure the approval of the Legislature before it can promulgate new regulations. To "sever" the legislative-veto provision from its surrounding provisions would be to transform the act into one in which the DCH merely apprises the Legislature of such regulations. Although, as the Court of Appeals asserted, the Legislature "might have chosen to do the same thing anyway," this is hardly the standard for judging whether a court is entitled effectively to rewrite a legislative enactment. See Blank, supra at 122-124, 611 N.W.2d 530; Maki v. East Tawas, 385 Mich. 151, 159, 188 N.W.2d 593 (1971).
(3) At every relevant juncture of the regulatory process, the DCH acted explicitly in exclusive reliance on 2001 PA 60. For example, in its September 28, 2001, letter to the House and Senate committees on community health, the DCH stated, "The passage of PA 60 of 2001 has provided the state with the opportunity to *474 change pharmacy policies within the Michigan Department of Community Health...." The DCH now argues that myriad other state laws conferred upon them similar regulatory authority. While this may ultimately prove to be correct, this Court should first examine whether the Legislature truly went through a redundant exercise in enacting a detailed and specific new statute where its principal provisions were already implicit in existing statutes  statutes making no express mention of either preauthorization or rebate authority by the DCH.
Because I am not prepared to accept the increasingly prevalent proposition that the exercise of regulatory power constitutes evidence of its authority, I would grant expedited leave to appeal to consider and resolve this important matter.